STATE OF NORTH CAROLINA v. MICHAEL LYNN HUNT

No. 547A90

(Filed 6 December 1991)

**Homicide § 21.5 (NCI3d) — first degree murder — premeditation and deliberation — sufficient evidence**

There was sufficient evidence of premeditation and deliberation to support defendant's conviction for first degree murder where the evidence, including defendant's statement to the police, tended to show that after the victim had pushed defendant down, the victim started up a hill and away from defendant; defendant got up, took his pistol out of his pocket, took aim, and shot the victim; defendant shot the victim two more times while the victim was falling backward to the ground; defendant later told an officer that he shot the victim because he was angry at the victim for pushing him down; following the shooting, defendant left the victim to die without attempting to obtain assistance for him; defendant disposed of his gun by throwing it into a river; defendant drove to the victim's home one and a half hours after he killed the victim; and defendant told the victim's wife that he had dropped the victim off at "the projects" earlier and was supposed to meet the victim at his home.

**Am Jur 2d, Homicide §§ 425, 428, 439.**

APPEAL as of right by defendant pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of life imprisonment entered by *Clark, J.*, at 16 July 1990 Criminal Session of Superior Court, ROBESON County, upon a jury verdict of guilty of first degree murder. Heard in the Supreme Court 15 November 1991.

The defendant was tried for his life for first degree murder. The evidence viewed in the light most favorable to the State, including the defendant's statement to the police, showed that on 6 December 1989 after receiving their paychecks, the defendant and the deceased drove to a dirt road, Rural Paved Road 1164, to pick up an "eightball of cocaine." Defendant had supposedly told the deceased that a man, Buddy Roll, was going to pick up some cocaine and that if Roll did, then he would put it beside

a tree on a dirt road beside the canal for the defendant and the deceased.

After they could not find the cocaine, the defendant said the deceased became angry, called the defendant names and pushed the defendant down. As the deceased started up the hill towards the car, the defendant got up, took his pistol out of his coat pocket, and fired it at the deceased. He told the police that he shot one time, and as the deceased was falling back, he fired at the deceased two more times. The defendant left and went to his sister's house. It was about 7:45 p.m. when the defendant shot the deceased.

The defendant stated that he stayed at his sister's house until 9:30 p.m. when he went to the deceased's home. On the way, he threw his pistol off the bridge at the river. He told the deceased's wife that he had dropped the deceased off at "the projects" earlier and was supposed to meet him there. After the defendant and Mrs. Smith smoked some cocaine, the defendant returned to his sister's house. The defendant told the police that he shot the deceased because he became angry at the deceased for pushing him down.

The next day, the deceased's body was found near a canal near Rural Paved Road 1164 in Robeson County. He had died as a result of two gunshot wounds through the back and one gunshot wound to the head. When the defendant was questioned by the police that day, he only told them that he had dropped the deceased off at "the projects" and that he was supposed to meet him later at the deceased's home. On 8 December 1989, the defendant made a statement to the police admitting he had shot the deceased.

The defendant's trial testimony was substantially the same as his original statement. He testified that the deceased had wanted to buy his pistol but that he had refused to sell it. He further testified that the deceased had pushed him down "real hard" onto the ground, cursed and yelled at him, charged at him like a bull, and pushed him in the stomach where the defendant had had an operation. His mind then went blank and the next thing he knew he had shot the deceased three times.

The defendant appealed to this Court.

**STATE v. HUNT**

[330 N.C. 425 (1991)]

*Lacy H. Thornburg, Attorney General, by Mary Jill Ledford, Assistant Attorney General, for the State.*

*Omar Saleem and Gayla G. Biggs, Assistant Public Defenders, for defendant appellant.*

WEBB, Justice.

The defendant argues that the case against him should have been dismissed because the evidence was not sufficient to support a jury verdict of first degree murder based upon premeditation and deliberation. The intentional and unlawful killing of a human being with malice and with premeditation and deliberation is first degree murder. *State v. Fleming,* 296 N.C. 559, 251 S.E.2d 430 (1979); N.C.G.S. § 14-17 (1989). Premeditation means that the act was thought out beforehand for some length of time, however short, but no particular amount of time is necessary for the mental process of premeditation; it is sufficient if the process of premeditation occurred at any point prior to the killing. *State v. Brown,* 315 N.C. 40, 58, 337 S.E.2d 808, 822 (1985), *cert. denied,* 476 U.S. 1165, 90 L.Ed.2d 733 (1986). Deliberation means an intent to kill carried out in a cool state of blood, in furtherance of a fixed design for revenge or to accomplish an unlawful purpose and not under the influence of a violent passion, suddenly aroused by lawful or just cause or legal provocation. *Id.*

An unlawful killing is deliberate and premeditated if done as part of a fixed design to kill, notwithstanding the fact that the defendant was angry or emotional at the time, unless such anger or emotion was strong enough to disturb the defendant's ability to reason. *State v. Fisher,* 318 N.C. 512, 517, 350 S.E.2d 334, 338 (1986). The requirement of a "cool state of blood" does not require that the defendant be calm or tranquil. *State v. Myers,* 299 N.C. 671, 263 S.E.2d 768 (1980). The phrase "cool state of blood" means that the defendant's anger or emotion must not have been such as to overcome the defendant's reason. *State v. Brown,* 315 N.C. at 58, 337 S.E.2d at 822.

In this case, there was sufficient evidence that the killing was premeditated and deliberate. The evidence, including the defendant's statement to the police, tends to show that the defendant formed a fixed design for revenge against the deceased. After the defendant was pushed down by the deceased, the victim started

up the hill and away from the defendant. The defendant got up, took his pistol out of his pocket, took aim, and shot the victim. He continued to shoot the victim while the victim was falling backward to the ground. Later, the defendant told Officer Patterson that he shot the victim because he became angry at the victim for pushing him down.

This evidence tends to show that there was ample time for the defendant to formulate the intent to kill the victim, that he possessed the requisite intent, and that he carried out that intent. This Court, in *State v. Fields*, 315 N.C. 191, 337 S.E.2d 518 (1985), held that there was ample time for the defendant to formulate an intent to kill when the defendant did not shoot the victim immediately upon learning of the victim's presence. Instead, the defendant waited until the victim turned away before he drew his gun and told the victim to "hold it." As the victim turned back around, the defendant shot the victim five times. *State v. Fields*, 315 N.C. at 200, 337 S.E.2d at 524.

The fact that the victim was fleeing, that the defendant shot him in the back, and that the defendant shot the victim three times is further evidence of premeditation and deliberation. This Court has held that the nature and number of the victim's wounds is a circumstance from which an inference of premeditation and deliberation can be drawn. *State v. Bullard*, 312 N.C. 129, 161, 322 S.E.2d 370, 388 (1984).

There is no evidence of provocation by the deceased sufficient to disturb the defendant's ability to reason. "The defendant was not operating under the influence of overwhelming fear or passion, but with a cool, deliberate state of mind." *State v. Fields*, 315 N.C. at 201, 337 S.E.2d at 524. Following the murder, the defendant left the deceased to die without attempting to obtain assistance for the deceased. The defendant still possessed the cool and deliberate presence of mind when he disposed of the murder weapon, and lied to the deceased's wife about the deceased's whereabouts in an attempt to cover up the crime.

Evidence of the defendant's conduct and statements before and after the killing may be considered in determining whether a killing was with premeditation and deliberation. *State v. Brown*, 315 N.C. at 59, 337 S.E.2d at 823. Here, the defendant drove to the deceased's house one and a half hours after he killed the deceased. He lied to the deceased's wife about the deceased's

whereabouts. He told her he had dropped the deceased off at "the projects" and had planned to meet the deceased at the deceased's home later. This evidence is another circumstance from which premeditation or deliberation can be inferred.

*State v. Corn*, 303 N.C. 293, 278 S.E.2d 221 (1981), upon which the defendant relies, is distinguishable from this case. In that case the decedent entered the defendant's home in a highly intoxicated state, approached the sofa on which the defendant was lying and insulted the defendant. The defendant immediately jumped from the sofa, picked up his rifle which was near the sofa and shot the deceased several times in the chest. The entire incident lasted only a few seconds. We held that the evidence did not show that the defendant acted with a fixed design or that he had sufficient time to weigh the consequences of his action. For this reason, there was not sufficient evidence of premeditation or deliberation to be submitted to the jury. In this case, there was evidence that the actions of the deceased had so angered the defendant that he formed the intention to kill the deceased and carried out this plan. The deceased was moving away from the defendant and there was sufficient time for the defendant to weigh the consequences of his act.

We hold that there was sufficient evidence of premeditation and deliberation to support the defendant's conviction for first degree murder.

No error.