STATE v. McADOO

[165 N.C. App. 222 (2004)]

━━━━━━━━

STATE OF NORTH CAROLINA v. JOSHUA MICHAEL McADOO

No. COA03-1061

(Filed 6 July 2004)

**1. Homicide— first-degree murder—instruction—cool state of mind**

The trial court did not err in a first-degree murder case by its instruction to the jury on cool state of mind regarding the additional instructions on deliberation, because: (1) defendant waived review of a portion of the instruction by moving to change the original wording, which the trial court granted, thus inviting any error; and (2) the trial court's instructions were supported by controlling law as interpreted by our Supreme Court.

**2. Homicide— first-degree murder—motion to dismiss—sufficiency of evidence—premeditation and deliberation**

The trial court did not err by failing to dismiss the charge of first-degree murder based on alleged insufficient evidence of premeditation and deliberation, because: (1) there was ample opportunity for defendant to formulate an intent to kill when defendant did not shoot the victim immediately, but observed the victim for a short time before firing multiple shots; and (2) following the shooting, defendant continued to threaten his estranged wife and his daughter by telling them that he was going to kill them.

**3. Homicide— first-degree murder—short-form indictment—constitutionality**

The short-form indictment used to charge defendant with first-degree murder is constitutional.

Appeal by defendant from judgment entered 13 December 2002 by Judge Melzer A. Morgan, Jr., in Guilford County Superior Court. Heard in the Court of Appeals 19 May 2004.

*Attorney General Roy Cooper, by Special Deputy Attorney General Ronald M. Marquette, for the State.*

*Nora Henry Hargrove, for defendant-appellant.*

TYSON, Judge.

Joshua Michael McAdoo ("defendant") appeals from a judgment entered after a jury found him to be guilty of first-degree murder. We conclude there was no error at trial.

## I. Background

In 1998, defendant's wife, Dana McAdoo ("Dana"), removed defendant's belongings from their residence because he was seeing another woman. Defendant and Dana had been married about two months and were the parents of a young daughter. Dana took the child to visit defendant without court-ordered visitation. Following two altercations, including an incident where defendant broke into Dana's residence and went through her belongings, Dana obtained a protective order.

In 1999, Dana began seeing Tyrone Griggs ("Griggs"). On 24 December 1999, Dana and her child were visiting at Griggs's house in Guilford County. Defendant was visiting with his sister, Janel Harris

**STATE v. McADOO**

[165 N.C. App. 222 (2004)]

("Harris"), in Orange County. Around 10:00 a.m., defendant dialed a phone number, handed the telephone to Harris, and told her to ask to speak with Dana. Griggs answered the telephone. Dana signaled to Griggs to deny that she was at his house. Dana was unaware anyone knew that she and her daughter were at Griggs's house or knew Griggs's telephone number. Harris testified that the man who answered the phone "chuckled" when he said she had the wrong number, but she did not know his name. After Harris told defendant the response to her telephone call, he departed and drove from Orange County to Griggs's house in Guilford County.

Approximately one hour after the telephone call, Dana heard the doorbell ring and a knock at the front door. Griggs went to a bedroom, looked out a window, and told Dana that defendant was at the front door. Dana went to the bedroom and saw defendant walk away from the front door, get into his car, back out of the driveway, and park directly across the street.

Dana called 911 because defendant was violating the protective order. While Dana was on the phone, defendant returned to the house. Dana saw him at the back door and yelled, "He's here, he's here." Defendant kicked in the back door, fired one shot near Dana, and fired four additional shots towards Griggs. He grabbed Dana, dragged her across the floor by her hair, and put her in front of Griggs's body. Dana noticed that defendant had wrapped latex gloves around his hands. The child ran to Dana as defendant reloaded his gun. Defendant stated he planned to kill them both.

Law enforcement personnel were dispatched and responded to Griggs's house. Defendant tried to leave with Dana and the child. After Deputy Sheriff James Cuddeback ordered defendant to get on the ground, defendant grabbed Dana and told her, "Tell them to go away or I'll kill you." Defendant also threatened to kill himself. Defendant, Dana, and the child remained inside Griggs's house.

Between 11:30 a.m. and noon that day, defendant called his sister, Harris, and told her that he had "just killed Dana's boyfriend." Harris could hear Dana crying in the background. Dana noticed that defendant was not paying attention to her, grabbed her daughter, escaped from the house, and ran into the street. Defendant came outside, waived the gun, and talked while pacing back and forth. He told the officers that he would not hurt anyone in law enforcement. Tear gas was eventually used to remove defendant from inside the house.

**STATE v. McADOO**

[165 N.C. App. 222 (2004)]

At trial, defendant presented the testimony of two psychologists, who testified that he suffered from diminished mental capacity. Dr. John Warren, an expert in clinical psychology, testified that defendant did not have the mental capacity to form the specific intent to kill. Dr. James Hilkey ("Dr. Hilkey"), an expert in forensic psychology, testified that defendant had difficulty with interpersonal relationships and an impaired interpretation of reality. Dr. Hilkey stated that defendant's experience in the Marine Corps was traumatic and impaired his ability to interpret reality.

The jury found defendant to be guilty of first-degree murder. He was sentenced to life imprisonment without parole. Defendant appeals.

## II. Issues

The issues presented are whether the trial court erred in: (1) instructing the jury on "cool state of mind" because the instructions expressed an opinion and deprived defendant of his rights to a defense, due process, and fundamental fairness; (2) denying defendant's motion to dismiss the charge of first-degree murder; and (3) denying defendant's motion to dismiss the short-form indictment.

## III. Jury Instructions

[1] Defendant contends the trial court erred in adding to the pattern jury instructions on "cool state of mind." We disagree.

The trial court instructed the jury on the deliberation element of first-degree murder in accordance with the North Carolina Pattern Jury Instructions, N.C.P.I.—Crim. 206.13 (2003):

> And fifth, that the defendant [Joshua McAdoo] acted with deliberation, which means that he acted while he was in a cool state of mind. [Cool state of mind] does not mean that there had to be a total absence of passion or emotion. If the intent to kill was formed with a fixed purpose, not under the influence of some suddenly aroused violent passion, it is immaterial that the defendant [Joshua McAdoo] was in a state of passion or excited when the intent was carried into effect.

The trial court added in the following statements immediately following this portion of its instruction:

> Cool state of mind means that a killing was committed with a fixed design to kill, regardless of whether the person was angry

or gripped with passion at the time of the act. A person may be capable of forming murderous intent, premeditating and deliberating, yet be prompted and to a large extent controlled by passion at the time of the offense. Cool state of mind also means that the defendant's anger or emotion was not so strong as to overcome the defendant's ability to weigh and consider the consequences of his actions—of his action [sic].

Defendant objected to this later portion as misleading and a misstatement of the law. Defendant requested the trial court to instruct the jury, "Deliberation refers to a steadfast resolve and deep rooted purpose, or a design formed after carefully considering the consequences." He also requested an instruction that stated, "The intent to kill must arise from a fixed determination previously formed after weighing the matter." The trial court denied defendant's requests. Defendant asserts the trial court erred in instructing the jury using the additional statements given in addition to the pattern jury instructions on deliberation.

Our Supreme Court addressed a similar issue in *State v. Montgomery*, 331 N.C. 559, 570, 417 S.E.2d 742, 748 (1992). In *Montgomery*, the Supreme Court granted the defendant a new trial because the trial court's instruction on reasonable doubt was an incorrect statement of law and violated the requirements of the Due Process Clause as interpreted by the United States Supreme Court in *Cage v. Louisiana*, 498 U.S. 39, 112 L. Ed. 2d 339 (1990). 331 N.C. at 573, 417 S.E.2d at 749-50. The Court noted, "[t]he trial court has the duty to define the term 'reasonable doubt' when requested to give such an instruction to the jury." *Id.* at 570, 417 S.E.2d at 748 (citing *State v. Shaw*, 284 N.C. 366, 200 S.E.2d 585 (1973)). When instructing the jury, the trial court is not required to use "an exact formula," however, "its instruction must be a correct statement of the law." *Montgomery*, 331 N.C. at 570, 417 S.E.2d at 748 (citations omitted). The issue before us is whether the trial court's additional instructions on deliberation are correct statements of law.

The trial court instructed the jury, "Cool state of mind means that a killing was committed with a fixed design to kill, regardless of whether the person was angry or gripped with passion at the time of the act." In *State v. Saunders*, our Supreme Court set forth the elements of first-degree murder, and ruled, " '[c]ool state of blood' as used in connection with premeditation and deliberation does not mean absence of passion and emotion but means that an unlawful killing is deliberate and premeditated if executed *with a fixed design*

*to kill notwithstanding defendant was angry or in an emotional state at the time.*" 317 N.C. 308, 312, 345 S.E.2d 212, 215 (1986) (quoting *State v. Ruof*, 296 N.C. 623, 636, 252 S.E.2d 720, 728 (1979)) (emphasis supplied).

The trial court also instructed, "A person may be capable of forming murderous intent, premeditating and deliberating, yet be prompted and to a large extent controlled by passion at the time of the offense." This instruction was essentially identical to the analysis and discussion in *State v. Johnston*, 331 N.C. 680, 685, 417 S.E.2d 228, 231 (1992) (citing *State v. Olson*, 330 N.C. 557, 564, 411 S.E.2d 592, 595 (1992)) ("A perpetrator may premeditate, deliberate, and intend to kill although prompted and to a large extent controlled by passion at the time.").

The trial court's final instruction regarding deliberation stated, "Cool state of mind also means that the defendant's anger or emotion was not so strong as to overcome the defendant's ability to weigh and consider the consequences of his actions . . . ." Defendant moved to change the original wording, which the court granted, resulting in the instruction given and now assigned as error. By requesting this portion of the instruction, defendant invited any error that resulted and waives review. *State v. King*, 352 N.C. 457, 546 S.E.2d 575 (2001), *cert. denied*, 534 U.S. 1147, 151 L. Ed. 2d 1002 (2002). Further, the trial court originally proposed to end the sentence, "so strong as to overcome the defendant's reason." This statement is supported by *State v. Hunt*, where the Supreme Court ruled, "[t]he phrase 'cool state of blood' means that the defendant's anger or emotion must not have been such as to overcome the defendant's reason." 330 N.C. 425, 427, 410 S.E.2d 478, 480 (1991) (citing *State v. Brown*, 315 N.C. 40, 58, 337 S.E.2d 808, 822 (1985)).

The trial court's instructions were supported by controlling law as interpreted by our Supreme Court. *See Montgomery*, 331 N.C. at 570, 417 S.E.2d at 748. This assignment of error is overruled.

### IV. Motion to Dismiss

[2] Defendant contends the trial court erred in failing to dismiss the charge of first-degree murder due to insufficient evidence of premeditation and deliberation. We disagree.

A motion to dismiss for insufficiency of the evidence is properly denied if substantial evidence exists to show: (1) each essential element of the offense charged; and (2) that defendant is the perpetrator

of such offense. *State v. Powell*, 299 N.C. 95, 98, 261 S.E.2d 114, 117 (1980). "The trial court's function is to test whether a *reasonable inference* of the defendant's guilt of the crime charged may be drawn from the evidence." *Id.* at 99, 261 S.E.2d at 117 (citations omitted). The evidence is to be considered in the light most favorable to the State. *Id.*

First-degree murder is the intentional and unlawful killing of a human being with malice and with premeditation and deliberation. *Hunt*, 330 N.C. at 427, 410 S.E.2d at 480 (citing *State v. Fleming*, 296 N.C. 559, 251 S.E.2d 430 (1979); N.C. Gen. Stat. § 14-17 (1989)). "Premeditation means that the act was thought out beforehand for some length of time, however short, but no particular amount of time is necessary for the mental process of premeditation; it is sufficient if the process of premeditation occurred at any point prior to the killing." *Hunt*, 330 N.C. at 427, 410 S.E.2d at 480 (citing *State v. Brown*, 315 N.C. 40, 58, 337 S.E.2d 808, 822 (1985), *cert. denied*, 476 U.S. 1165, 90 L. Ed. 2d 733 (1986)). "Deliberation means an intent to kill carried out in a cool state of blood, in furtherance of a fixed design for revenge or to accomplish an unlawful purpose and not under the influence of a violent passion, suddenly aroused by lawful or just cause or legal provocation." *Hunt*, 330 N.C. at 427, 410 S.E.2d at 480 (citing *Brown*, 315 N.C. at 58, 337 S.E.2d at 822). "[T]he nature and number of the victim's wounds is a circumstance from which an inference of premeditation and deliberation can be drawn." *Hunt*, 330 N.C. at 428, 410 S.E.2d at 481 (citing *State v. Bullard*, 312 N.C. 129, 161, 322 S.E.2d 370, 388 (1984)). "Evidence of the defendant's conduct and statements before and after the killing may be considered in determining whether a killing was with premeditation and deliberation." *Hunt*, 330 N.C. at 428, 410 S.E.2d at 481 (citing *Brown*, 315 N.C. at 59, 337 S.E.2d at 823)).

Here, the State presented evidence of premeditation and deliberation, including testimony that after discovering Dana was present at Griggs's house, defendant drove from Orange County to Guilford County. After arriving at Griggs's house, defendant approached the door, walked back to his car, and put on latex gloves. He entered Griggs's house and fired a total of five shots towards Dana and Griggs. In *State v. Fields*, our Supreme Court held there was "ample time and opportunity for defendant to formulate an intent to kill" when the defendant did not shoot the victim immediately, but observed the victim for a short time and then shot the victim five times. 315 N.C. 191, 200, 337 S.E.2d 518, 524 (1985).

GLOBAL FURN., INC. v. PROCTOR

[165 N.C. App. 229 (2004)]

Following the shooting, defendant continued to threaten Dana and his daughter that he was going to kill them.

The State presented substantial evidence to allow a juror to reasonably infer defendant's guilt and to survive defendant's motion to dismiss. This assignment of error is overruled.

## V. Short-Form Indictment

[3] Defendant contends the short-form indictment was constitutionally defective. "We have reviewed over fifty additional decisions in which this issue has been raised and rejected by our Supreme Court and this Court in the last three years. These decisions consistently hold that the short form murder indictment is constitutional." *State v. Messick*, 159 N.C. App. 232, 238, 585 S.E.2d 392, 396 (2003), *per curiam aff'd*, 358 N.C. 145, 593 S.E.2d 583 (2004). This assignment of error is without merit.

## VI. Conclusion

The trial court properly instructed the jury regarding the element of deliberation and used correct statements of law. The trial court did not err in denying defendant's motion to dismiss as the State presented sufficient evidence of premeditation and deliberation. Defendant's assignment of error regarding the short-form indictment is without merit. Defendant's trial was free of errors he assigned and argued.

No Error.

Judges McGEE and TIMMONS-GOODSON concur.