STATE OF NORTH CAROLINA
v.
WILLIAM JAMES SCHREIBER
No. COA08-250
Court of Appeals of North Carolina
Filed December 2, 2008
This case not for publication
Attorney General Roy Cooper, by Assistant Attorney General Diane A. Reeves, for the State.
Thomas R. Sallenger for defendant.
ELMORE, Judge.
On 23 May 2007, William James Schreiber (defendant) was convicted by a jury of the first-degree murder of Teri Sokoloff and her daughter, Skye Sokoloff. The jury was unable to reach a unanimous verdict following a capital sentencing proceeding, and the trial court declared a mistrial and imposed consecutive sentences of life without parole. Defendant now appeals his convictions. For the reasons stated below, we hold that defendant received a trial free from error.
Ms. Teri Sokoloff (Teri) lived with her two daughters, Briana and Skye, and defendant in Guilford County. On 19 September 2005, Walter Suplick found the bodies of Teri and Skye Sokoloff in Teri's apartment after Teri failed to pick up her older daughter from school that day. Teri's body was found in the upstairs bedroom and the medical examiner who performed the autopsy testified that he identified fourteen stab wounds about Teri's neck and sides. The medical examiner opined that the cause of death stemmed from significant damage to the structures of Teri's neck. This damage included an "interrupted" artery and a lacerated jugular vein. Skye's fully clothed body was found lying in seven to eight inches of water in the bathtub. The medical examiner opined that Skye died of drowning. A crime scene investigator with the Greensboro Police Department examined Teri's apartment after the bodies' discovery. The investigators found a kitchen paring knife in the dishwasher and a red stain on the inside of the kitchen cabinet. The red stain on the cabinet tested positive for blood.
On 19 September 2005, Virginia State Police Officer C.J. Aitkens stopped a vehicle traveling on Interstate 95 after he observed it driving eighty-eight miles per hour in a sixty-five-mile-per-hour zone. Defendant was identified as the driver. Following a preliminary roadside breath test, defendant was arrested for driving under the influence. The vehicle that defendant was driving was registered to Teri Sokoloff. In a subsequent statement given, reviewed, and corrected by defendant, he admitted killing Teri and Skye and also described in detail how he did so.
At trial, defense witness Dr. James Hilkey, a forensic psychologist, testified that defendant's mental state was"significantly impaired" at the time of the killings and that defendant was suffering from a mental disease or defect that affected his capacity to use judgment and conduct himself in a responsible manner. Dr. Helkey further testified that these mental health issues caused defendant's "capacity to comprehend and understand according to the law [to become] significantly impaired." He testified that defendant did not have the ability to form the specific intent to kill or to premeditate and deliberate.
Defendant asserts that the same trial error occurred as to both of his first degree murder convictions. Defendant claims that the trial court erred by denying his motions to dismiss because the evidence was legally insufficient to prove every necessary element of the charged offense of first degree murder. A motion to dismiss should be denied if "there is substantial evidence (1) of each essential element of the offense charged ... and (2) of defendant's being the perpetrator of the offense." State v. Barnes, 334 N.C. 67, 75, 430 S.E.2d 914, 918 (1993) (quotations and citation omitted). When reviewing a motion to dismiss based on insufficiency of the evidence, we "view the evidence in the light most favorable to the State, giving the State the benefit of all reasonable inferences. Contradictions and discrepancies do not warrant dismissal of the case but are for the jury to resolve." Id. (citations omitted). The State must prove the following elements of premeditated, first degree murder: "(1) an unlawful killing; (2) with malice; (3) with the specific intent to kill formed after some measure of premeditation and deliberation." State v. Peterson, 361 N.C. 587, 595, 652 S.E.2d 216, 223 (2007) (citations omitted); see also N.C. Gen. Stat. § 14-17 (2007) (requiring proof of a murder perpetrated by means of "willful, deliberate, and premeditated killing").
Premeditation means that the act was thought out beforehand for some length of time, however short, but no particular amount of time is necessary for the mental process of premeditation; it is sufficient if the process of premeditation occurred at any point prior to the killing. Deliberation means an intent to kill carried out in a cool state of blood, in furtherance of a fixed design for revenge or to accomplish an unlawful purpose and not under the influence of a violent passion, suddenly aroused by lawful or just cause or legal provocation.
State v. Hunt, 330 N.C. 425, 427, 410 S.E.2d 478, 480 (1991) (citations omitted). "[T]he nature and number of the victim's wounds is a circumstance from which an inference of premeditation and deliberation can be drawn." Id. at 428, 410 S.E.2d at 481 (citation omitted). "Evidence of the defendant's conduct and statements before and after the killing may be considered in determining whether a killing was with premeditation and deliberation." Id. (citation omitted).
Premeditation and deliberation relate to mental processes and ordinarily are not readily susceptible to proof by direct evidence. Instead, they usually must be proved by circumstantial evidence. Among other circumstances to be considered in determining whether a killing was with premeditation and deliberation are: (1) want of provocation on the part of the deceased; (2) the conduct and statements of the defendant before and after the killing; (3) threats and declarations of the defendant before and during the course of the occurrence giving rise to the death of the deceased; (4)ill-will or previous difficulty between the parties; (5) the dealing of lethal blows after the deceased has been felled and rendered helpless; and (6) evidence that the killing was done in a brutal manner. We have also held that the nature and number of the victim's wounds are circumstances from which premeditation and deliberation can be inferred.
State v. Morgan, 359 N.C. 131, 161-62, 604 S.E.2d 886, 904-05 (2004) (quotations and citation omitted).
Defendant contends that the State did not present sufficient evidence of his preconceived intent to kill Teri. He argues that the record contained no evidence from which a jury could reasonably infer that defendant had formed, in a cool state of blood, the specific intent to kill Teri well before the final acts which led to her death. Defendant argues that, instead, Teri's death resulted from his argument with her. As to the premeditated and deliberated murder of Skye Sokoloff, defendant argues that the purpose to kill was formed, if at all, as a result of his fight with Teri. He argues that Skye's death was promoted and controlled by passion and thus lacked the essential element of deliberation.
Defendant's arguments are unpersuasive. Evidence that a killing occurred over a short period of time during which passionate emotions were in play does not preclude premeditation and deliberation. State v. Misenheimer, 304 N.C. 108, 113-14, 282 S.E.2d 791, 795-96 (1981). Furthermore, "[d]eliberation may occur during a scuffle or a quarrel between the defendant and the victim if the emotions produced by the scuffle or quarrel have not overcome the defendant's faculties and reason." State v. Larry,345 N.C. 497, 513, 481 S.E.2d 907, 916 (1997) (quotations and citation omitted).
The trial court considered the following factors before denying defendant's motions to dismiss: (1) lack of legal provocation by Teri and Skye Sokoloff; (2) the conduct of defendant before and after the killings; (3) defendant's admitted threatening thoughts about Teri; (4) ill will and arguing between defendant and Teri; (5) lethal attacks that continued to the point of death after the two victims were felled and rendered helpless; and (6) evidence that the killings were done in a brutal manner.
The State presented evidence that defendant went to the kitchen to arm himself with a knife in the midst of arguing with Teri. Defendant lied to Teri and told her that he was going to the bathroom. Defendant then proceeded to use the knife to stab Teri fourteen times and kill her as they continued to argue. Our Supreme Court has held that similar evidence was sufficient to establish premeditation and deliberation. State v. Zuniga, 320 N.C. 233, 259, 357 S.E.2d 898, 915 (1987). In Zuniga, as here, the defendant stabbed the victim "through the neck, partially removing the knife, and then plunging it home again." Id. The court held that, in light of the repeated blows, the manner of the killing, the victim's prior relationship with the defendant, and the disparity in the sizes of the cuts, the jury was entitled to believe that the defendant killed the victim with premeditation and deliberation. Id. Given the similarity of the circumstances in Zuniga, both the physical evidence and defendant's statement[1] met the threshold requirement of sufficient evidence of premeditation and deliberation.
Following the fatal attack on Teri, defendant's conduct demonstrates further evidence of premeditation and deliberation before Skye's killing. The evidence demonstrated that defendant killed Skye long after her mother's death. Following the attack on Teri and before the attack on Skye, defendant took the time to go to the store to purchase various items. There was no indication that defendant tried to revive Skye after drowning her; instead, the evidence showed that he left her body lying in the water.
Viewing the forensic and physical evidence in the light most favorable to the State, there was substantial evidence for a jury to reasonably infer that defendant's acts were calculated and committed with premeditation and deliberation. Accordingly, we hold that the trial court properly denied defendant's motion to dismiss.
Defendant next argues generally that the trial court violated his rights under United States Constitution and the North Carolina Constitution. However, defendant never presents any arguments about these alleged constitutional violations in his brief. Defendant's only support for his constitutional arguments is an allegation that the trial court misapplied the standard for evaluating sufficient evidence. "Assignments of error not set out in the appellant's brief, or in support of which no reason or argument is stated or authority cited, will be taken as abandoned." N.C. R. App. P. 28(b)(6) (2007). Accordingly, we deem defendant's constitutional arguments abandoned and do not review them.
Defendant received a trial free from error.
No error.
Judges TYSON and CALABRIA concur.
Report per Rule 30(e).
NOTES
[1] After the statement, Defendant said: "I know this sounds funny, but I feel like I did her a favor. She just couldn't imagine being able to be a mother to the kids."