STATE OF NORTH CAROLINA
v.
SHAWN ANTONIO HORSKINS, DEFENDANT

No. COA12-1489

Filed 2 July 2013

1. **Homicide—first-degree murder—motion to dismiss—sufficiency of evidence—premeditation and deliberation**

The trial court did not err by denying defendant's motion to dismiss the charge of first-degree murder at the close of all evidence. There was sufficient evidence, taken in the light most favorable to the State, for a reasonable mind to find that defendant killed the victim with premeditation and deliberation.

2.  **Evidence—exclusion—victim a gang member—no prejudicial error**

The trial court did not err in a first-degree murder case by excluding evidence that defendant was told the victim was a gang member. Defendant could not show that exclusion of this evidence constituted prejudicial error.

Appeal by defendant from Judgment entered on or about 18 May 2012 by Judge Walter H. Godwin Jr. in Superior Court, Pasquotank County. Heard in the Court of Appeals 22 May 2013.

*Attorney General Roy A. Cooper III by Assistant Attorney General C. Norman Young Jr., for the State.*

*Law Offices of John R. Mills NPC by John R. Mills, for defendant-appellant.*

STROUD, Judge.

Shawn Antonio Horskins ("defendant") appeals from the judgment entered on 18 May 2012 after a jury found him guilty of first-degree murder. Defendant argues on appeal that the trial court erred in denying his motion to dismiss the charge of first-degree murder at the close of all the evidence because there was insufficient evidence of premeditation and deliberation. Defendant further argues the trial court erred in excluding testimony that defendant had been told Antoine Williams, the decedent, was a gang member. For the following reasons, we conclude that there was no prejudicial error at his trial.

## I. Background

On 19 January 2010, defendant was indicted for first-degree murder. Defendant pled not guilty on a theory of self-defense and proceeded to trial by jury in Superior Court, Pasquotank County.

The State's evidence at trial tended to show that Mr. Williams was killed in the parking lot of the Trios nightclub in Elizabeth City during the early morning hours of 1 January 2010. Defendant was an enlisted soldier in the United States Army stationed at Fort Lee, Virginia. Defendant met Everett "Booty" Bynum and Dominique Blunt while in training and associated with them while they were stationed at Fort Lee. On 30 December 2009, defendant, Mr. Bynum, and Mr. Blunt drove to Elizabeth City, Mr. Bynum's hometown.

STATE v. HORSKINS

[228 N.C. App. 217 (2013)]

On the evening of 31 December 2009, defendant and his friends were drinking and visiting local nightclubs. After leaving a club called "the Hut," Mr. Bynum drove defendant and Mr. Blunt to another nightclub called "Trios." On the way to Trios, Mr. Bynum handed defendant, who was riding in the front passenger seat, a nine millimeter pistol, which defendant kept by his feet.

Mr. Williams was celebrating the New Year that night with his sister, Triquita Williams, and her then-boyfriend Zarius Bohler. Ms. Williams drove the three of them to Trios, but they decided not to go in. As they were leaving the Trios parking lot, around 1 a.m., the car being driven by Mr. Bynum pulled in, blocking their way. Mr. Bynum immediately got out of his car and began yelling for his brother. Ms. Williams, who knew Mr. Bynum, yelled at him to move his car. He ignored her and continued yelling for his brother. Defendant got out of the passenger seat as Mr. Bynum was yelling.

At that point, Mr. Williams got out of his sister's car, walked toward Mr. Bynum's car, and yelled something to the effect of "You-all got to go, we trying to go home . . ." In response, defendant drew his pistol and fired one shot, after which Mr. Williams fell to the ground. Defendant then shot Mr. Williams six more times before he, Mr. Bynum, and Mr. Blunt got back in their car and left the scene.

As they were leaving the scene, defendant said "I think I just caught a body." Defendant, Mr. Bynum, and Mr. Blunt then went back to the house of Mr. Bynum's mother, retrieved their clothes, and started driving back to Fort Lee. They called a friend from Fort Lee to meet them in Petersburg, Virginia, to switch vehicles. On the way from Petersburg to Fort Lee, defendant used Mr. Blunt's jacket to wipe off the gun and then asked Mr. Blunt to throw the gun out of the window, which he did when they passed over the James River Bridge, near Fort Lee.

After the State rested its case-in-chief, defendant presented evidence to support his claim that he only shot Mr. Williams in self-defense. Defendant testified that when they got to Trios, Mr. Williams got out of his sister's car and said, "What's cracking?" to Mr. Bynum. In response, Mr. Bynum said, "What's popping?" Mr. Williams then said, "[Y]our slop ass needs to move this car out the way." Defendant testified that he recognized this exchange as gang-related. Officer Ervin Rodriguez, the gang coordinator for the Elizabeth City Police Department, testified that these phrases identified the speakers as members of the "Crips" gang and "Bloods" gang respectively and that a Crip calling a Blood "slop" was a grave insult.

After this exchange, Mr. Bynum told Mr. Williams they had a hand-gun with them. Mr. Williams responded, "[Y]ou not the only one with a forty" and then made a motion that looked to defendant like reaching for a gun. Defendant testified that he only fired at Mr. Williams when he saw that motion. He also testified that he did not shoot Mr. Williams after he fell.

At the close of all evidence, defendant moved to dismiss the charge of first-degree murder. The trial court denied the motion to dismiss. The charge of first-degree murder was submitted to the jury along with the lesser-included offenses of second-degree murder and voluntary manslaughter. The jury returned a verdict of guilty as to first-degree murder. The trial court accordingly sentenced defendant to life imprisonment without parole. Defendant gave oral notice of appeal in open court.

## II. Sufficiency of the Evidence

**[1]** Defendant first argues that the trial court erred in denying his motion to dismiss the charge of first-degree murder at the close of all evidence when there was insufficient evidence of premeditation and deliberation. We disagree.

### A. Standard of Review

> The standard of review for a motion to dismiss is well known. A defendant's motion to dismiss should be denied if there is substantial evidence of: (1) each essential element of the offense charged, and (2) of defendant's being the perpetrator of the charged offense. Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. The Court must consider the evidence in the light most favorable to the State and the State is entitled to every reasonable inference to be drawn from that evidence. Contradictions and discrepancies do not warrant dismissal of the case but are for the jury to resolve.

*State v. Teague*, ___ N.C. App. ___, ___, 715 S.E.2d 919, 923 (2011), *app. dismissed and disc. rev. denied*, ___ N.C. ___, 720 S.E.2d 684 (2012). "The defendant's evidence, unless favorable to the State, is not to be taken into consideration, except when it is consistent with the State's evidence, the defendant's evidence may be used to explain or clarify that offered by the State." *State v. Abshire*, 363 N.C. 322, 328, 677 S.E.2d 444, 449 (2009) (citations and quotation marks omitted).

B. Analysis

Here, it is uncontested that defendant shot Mr. Williams. The only question is whether there was substantial evidence of "each essential element of the offense charged". *Teague*, ___ N.C. App. at ___, 715 S.E.2d at 923.

"Murder in the first degree is the unlawful killing of a human being with malice and with premeditation and deliberation." *State v. Robbins*, 275 N.C. 537, 542, 169 S.E.2d 858, 861 (1969). The elements of murder have been well established by the courts of this state. If the State proves beyond a reasonable doubt that the defendant unlawfully killed another with malice,

> [n]othing else appearing, the defendant would be guilty of murder in the second degree. . . . The additional elements of premeditation and deliberation, necessary to constitute murder in the first degree, must be established beyond a reasonable doubt, and found by the jury, before the verdict of guilty of murder in the first degree can be returned; and the burden of so establishing these additional elements of premeditation and deliberation rests and remains on the State.

*State v. Propst*, 274 N.C. 62, 71, 161 S.E.2d 560, 567 (1968) (citations omitted).

> Premeditation has been defined . . . as thought beforehand for some length of time, however short. No particular length of time is required; it is sufficient if the process of premeditation occurred at any point prior to the killing. An unlawful killing is committed with deliberation if it is done in a "cool state of blood," without legal provocation, and in furtherance of a fixed design to gratify a feeling of revenge, or to accomplish some unlawful purpose. The intent to kill must arise from a fixed determination previously formed after weighing the matter.

*State v. Corn*, 303 N.C. 293, 297, 278 S.E.2d 221, 223 (1981) (citations omitted).

> "Cool state of blood" does not mean the absence of passion and emotion, but an unlawful killing is deliberate and premeditated if done pursuant to a fixed design to kill, notwithstanding that defendant was angry or in an emotional

state at the time unless such anger or emotion was such as to disturb the faculties and reason.

*State v. Britt*, 285 N.C. 256, 262, 204 S.E.2d 817, 822 (1974) (citations omitted).

As with other mental states,

premeditation and deliberation are not usually susceptible of direct proof and are therefore, susceptible of proof by circumstances from which the facts sought to be proven may be inferred. That these essential elements of murder in the first degree may be proven by circumstantial evidence has been repeatedly held by this court.

*State v. Faust*, 254 N.C. 101, 107, 118 S.E.2d 769, 772 (citations and quotation marks omitted), *cert. denied*, 368 U.S. 851, 7 L.Ed. 2d 49 (1961).

Our Supreme Court has outlined several factors relevant to the determination of whether the defendant acted with premeditation and deliberation:

Among the circumstances to be considered in determining whether a killing was with premeditation and deliberation are: Want of provocation on the part of deceased. The conduct of defendant before and after the killing. Threats and declarations of defendant before and during the course of the occurrence giving rise to the death of deceased. The dealing of lethal blows after deceased has been felled and rendered helpless.

*Id.* at 107, 118 S.E.2d at 773 (citations omitted). Additional factors include "the nature and number of the victim's wounds," whether the defendant "left the deceased to die without attempting to obtain assistance for the deceased," whether he "disposed of the murder weapon," and whether the defendant later lied about what happened. *State v. Hunt*, 330 N.C. 425, 428-29, 410 S.E.2d 478, 481 (1991).

Here, the State's evidence showed that Mr. Bynum pulled his car into the Trios parking lot, preventing Ms. Williams' car from leaving. Ms. Williams yelled at Mr. Bynum and defendant to move their car, but they ignored her. Mr. Williams then got out of the car and yelled at Mr. Bynum and defendant to move their car. According to Ms. Williams and her exboyfriend, all her brother said was something to the effect of "You-all got to go, we trying to go home . . ." before defendant shot him. Mr. Williams

was unarmed and he did not reach for anything, engage defendant in a fight, or otherwise provoke a violent response.

According to several witnesses, Mr. Williams hit the ground after defendant's first shot, but defendant kept firing. The medical examiner found that Mr. Williams had seven gunshot wounds in total, including some that entered from his back. After shooting Mr. Williams, defendant and his friends got back into Mr. Bynum's car and drove away. They stopped at the house of Mr. Bynum's mother, picked up their clothes, and drove back toward Fort Lee, Virginia. On the way back, defendant said, "I think I just caught a body."

Before reaching Fort Lee, they met up with a friend in Petersburg, Virginia and switched cars. Defendant said that they had to get rid of the gun, so he wiped the gun off with Mr. Bynum's red coat, handed it to Mr. Blunt, and told him to throw it off the James River Bridge. When they reached the bridge, Mr. Blunt rolled down the window and tossed the gun into the river below.

When they got back to Fort Lee, defendant asked his friends to make up an alibi and lie to investigators about his whereabouts on the night of the shooting. When one of the detectives from Elizabeth City called defendant later on 1 January 2010, defendant lied and told him that he had not been to Elizabeth City on the night of the shooting. Before he was arrested, defendant told his First Sergeant that he had been involved in a shooting, but did not tell him any details.

Defendant contends that there was uncontroverted evidence that Mr. Williams had said to defendant "You ain't the only one with a gun," used well-known gang insults, and reached behind him as if to grab a gun. Defendant further argues that his post-traumatic stress disorder (PTSD) and Army training undermine any inference of premeditation and deliberation to be drawn from the nature and number of the wounds he inflicted on Mr. Williams. We disagree.

First, we note that the evidence of any gang-related statements made by Mr. Williams came only from defendant. Although the State's evidence was contradictory concerning what Mr. Williams said to defendant before defendant started firing, there was some evidence that he only told defendant and Mr. Bynum to move their car. Thus, any evidence that Mr. Williams said "You ain't the only one with a gun," reached behind him, or used the word "slop" contradicts some of the State's evidence and is properly disregarded in deciding a motion to dismiss. *See Abshire*, 363 N.C. at 328, 677 S.E.2d at 449. Second, although a

reasonable person could infer that defendant's reaction may have been influenced by his Army training and PTSD, the jury was not required to believe defendant's evidence or assign it the weight he deems appropriate. Moreover, the State's evidence does not need to "exclude[] every reasonable hypothesis of innocence" to withstand a motion to dismiss. *State v. Riffe*, 191 N.C. App. 86, 89, 661 S.E.2d 899, 902 (2008) (citation and quotation marks omitted).

Defendant relies mostly on *State v. Corn*, 303 N.C. 293, 278 S.E.2d 221 (1981), and *State v. Williams*, 144 N.C. App. 526, 548 S.E.2d 802 (2001), *aff'd per curiam*, 355 N.C. 272, 559 S.E.2d 787 (2002), to support his arguments.

In *Corn*, our Supreme Court ordered a new trial because the State failed to present sufficient evidence of premeditation and deliberation to support the charge of first-degree murder. 303 N.C. at 298, 278 S.E.2d at 224. The shooting in *Corn* was

> brought on by some provocation on the part of the deceased. The evidence [was] uncontroverted that [the deceased] entered defendant's home in a highly intoxicated state, approached the sofa on which defendant was lying, and insulted defendant by a statement which caused defendant to reply "you son-of-a-bitch, don't accuse me of that." Defendant immediately jumped from the sofa, grabbing the .22 caliber rifle which he normally kept near the sofa, and shot Melton several times in the chest. The entire incident lasted only a few moments.

303 N.C. at 297-98, 278 S.E.2d at 223-24.

The decedent in *Corn* did not merely insult the defendant. There was also evidence that he also went "over to the couch on which defendant was lying, grabbed defendant, and began slinging him around and attempting to hit him." *Id.* at 295, 278 S.E.2d at 222. Although there was no history of threats or ill will between the decedent and the defendant, there was also "no evidence that any shots were fired after he fell or that defendant dealt any blows to the body once the shooting ended." *Id.* at 298, 278 S.E.2d at 224. Additionally, "[a]fter the shooting defendant walked across the street to his sister's house and called the Brevard Police Department. He then returned to his home and waited for law enforcement officers to arrive. Several officers testified that defendant was calm and cooperative during their investigation of the incident." *Id.* at 295, 278 S.E.2d at 222.

In *Williams*, two men began fighting in a nightclub. 144 N.C. App. at 527, 548 S.E.2d at 803. Defendant helped hold back the crowd to allow the two men to fight. *Id.* One man he was holding back punched defendant in the face. *Id.* at 527, 548 S.E.2d at 804. Defendant then drew his handgun and fatally shot the man in the neck. *Id.* Defendant fled the scene, but turned himself in the next day. *Id.* We concluded that the evidence did not support a charge of first-degree murder because there was insufficient evidence of premeditation and deliberation. *Id.* at 531, 548 S.E.2d at 805-06. We reasoned that there was no evidence the defendant knew the deceased before the shooting, the deceased had provoked defendant by punching him, and his actions before and after the shooting failed to show any "forethought." *Id.* at 530-31, 548 S.E.2d at 805.

*Corn* and *Williams* are distinguishable from this case because the State's evidence here showed no provocation on the part of Mr. Williams, there was evidence that defendant kept shooting after Mr. Williams fell, and he attempted to hide evidence from the shooting. Although defendant contends that he was provoked, in both *Williams* and *Corn* the provocation included a physical altercation. *See State v. Bass*, 190 N.C. App. 339, 345, 660 S.E.2d 123, 127 (noting that an argument between the deceased and the defendant "[did] not rise to the level of provocation such as the physical altercations that provoked the defendants in *Williams* and *Corn*."), *app. dismissed*, 362 N.C. 683, 670 S.E.2d 566 (2008). There was no such evidence here.

The State's evidence showed that Mr. Williams did nothing to provoke defendant. There was no fight. Mr. Williams did not attack or threaten defendant. According Mr. Williams' sister, all he did was tell defendant and Mr. Bynum to move their car. The State presented evidence that there was no "provocation by the deceased sufficient to disturb the defendant's ability to reason." *Hunt*, 330 N.C. at 428, 410 S.E.2d at 481.

Delivering "lethal blows after deceased has been felled and rendered helpless" also supports a finding of premeditation and deliberation. *Faust*, 254 N.C. at 107, 118 S.E.2d at 773. Here, there was substantial evidence that defendant felled Mr. Williams with one shot and then shot him another six times.

Further, although evidence of flight "may not be considered as tending to show premeditation and deliberation," *State v. Brewton*, 342 N.C. 875, 879, 467 S.E.2d 395, 398 (1996), a defendant's other actions after the shooting may be so considered, *Faust*, 254 N.C. at 107, 118 S.E.2d at 773. After the shooting, defendant did nothing to help Mr. Williams and

simply left him lying in the Trios parking lot. Indeed, after leaving the scene, defendant attempted to hide or destroy evidence, including the gun used. All of these factors support an inference of premeditation and deliberation. *See Hunt*, 330 N.C. at 428-29, 410 S.E.2d at 481; *Faust*, 254 N.C. at 107, 118 S.E.2d at 773.

Although the entire incident took place within a matter of minutes and the shooting within a matter of seconds, "no particular amount of time is necessary for the mental process of premeditation." *State v. Jones*, 342 N.C. 628, 630, 467 S.E.2d 233, 234 (1996) (citation and quotation marks omitted). "These mental processes must be prior to the killing, not simultaneous; but a moment of thought may be sufficient to form a fixed design to kill." *State v. Steele*, 190 N.C. 506, 511-12, 130 S.E. 308, 312 (1925) (citations and quotation marks omitted). The jury could have reasonably concluded that "there was sufficient time for the defendant to weigh the consequences of his act." *Hunt*, 330 N.C. at 429, 410 S.E.2d at 481.

Because there was sufficient evidence, taken in the light most favorable to the State, for a reasonable mind to find that defendant killed Mr. Williams with premeditation and deliberation, the trial court did not err in denying defendant's motion to dismiss the charge of murder in the first degree.

### III. Gang Evidence

[2] Defendant next argues the trial court erred in excluding evidence Mr. Bynum told defendant that Mr. Williams was a gang member. While defendant was testifying, he had the following exchange with his trial counsel:

> [Defense Counsel]: Did Everett [Bynum] ever tell you that he and Antoine didn't get along?
>
> [Defendant]: Yes.
>
> [Defense Counsel]: Did he ever tell you Antoine Williams was in a gang?
>
> [Prosecutor]: Objection.
>
> THE COURT: Sustained.
>
> [Defense Counsel]: Did he ever tell you that Antoine Williams carried a gun?
>
> [Prosecutor]: Objection.
>
> THE COURT: Sustained.

"To prevail on a contention that evidence was improperly excluded, either a defendant must make an offer of proof as to what the evidence would have shown or the relevance and content of the answer must be obvious from the context of the questioning." *State v. Geddie*, 345 N.C. 73, 95, 478 S.E.2d 146, 157 (1996) (citation omitted), *cert. denied*, 522 U.S. 825, 139 L.Ed. 2d 43 (1997). Although he made no offer of proof, defendant contends that it is obvious he would have said yes and that this evidence was relevant to his self-defense claim.

Even assuming *arguendo* that the content and relevance of the answer is obvious, defendant cannot show prejudicial error.

> [E]videntiary error does not necessitate a new trial unless the erroneous admission was prejudicial. The same rule applies to exclusion of evidence. Evidentiary error is prejudicial when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises. Defendant bears the burden of showing prejudice.

*State v. Jacobs*, 363 N.C. 815, 825, 689 S.E.2d 859, 865-66 (2010) (citations and quotation marks omitted).

Defendant contends that this evidence is admissible as a pertinent character trait of the deceased. "Character is a generalized description of a person's disposition, or of the disposition in respect to a general trait, such as honesty, temperance or peacefulness." *State v. Baldwin*, 125 N.C. App. 530, 536, 482 S.E.2d 1, 5 (citation and quotation marks omitted)), *disc. rev. dismissed as improvidently allowed*, 347 N.C. 348, 492 S.E.2d 354 (1997). We fail to see how membership in a gang meets that definition. Further, defendant did not attempt to introduce this supposed "character evidence" as reputation or opinion testimony or as testimony regarding specific instances of conduct. *See* N.C. Gen. Stat. § 8C-1, Rule 404(a)(1); N.C. Gen. Stat. § 8C-1, Rule 405 (2011).

Instead, it appears defendant was attempting to introduce the fact that he believed Mr. Williams to be in a gang as non-character evidence relevant to "the reasonableness of defendant's apprehension and use of force, which are essential elements of self-defense." *State v. Brown*, 120 N.C. App. 276, 277-78, 462 S.E.2d 655, 656 (1995) (citation omitted), *disc. rev. denied*, 342 N.C. 896, 467 S.E.2d 906 (1996).

Even assuming it would be otherwise relevant to defendant's self-defense claim, the fact that defendant thought Mr. Williams was in a

gang would be entirely irrelevant unless he knew that the man yelling at him to move the car was Mr. Williams. The evidence showed that defendant had never met Mr. Williams and there was no evidence that defendant could otherwise recognize decedent as Antoine Williams on the day in question. If defendant did not know the man yelling at him was Antoine Williams, then anything he knew about Antoine Williams' gang membership would be irrelevant to "the reasonableness of defendant's apprehension and use of force." *Brown,* 120 N.C. App. at 277-78, 462 S.E.2d at 656.

Additionally, defendant has failed to show that the jury would have reached a different result had they been informed that defendant thought Mr. Williams was in a gang. Both Mr. Blunt and defendant testified that Mr. Williams said something to the effect of "You ain't the only one with a gun." Defendant testified that he thought Mr. Williams was reaching for a gun when he shot him. Defendant also testified that Mr. Williams used a gang greeting when he and Mr. Bynum confronted each other. Officer Rodriguez, the Elizabeth City gang coordinator, confirmed that the phrase "What's cracking?" would identify the speaker, in this case Mr. Williams, as a member of the Crips gang. Given this testimony, we think it is unlikely that the jury would have come to a different conclusion on the basis of defendant's testimony that Mr. Bynum told him that Mr. Williams was in a gang. Therefore, defendant cannot show that exclusion of this evidence constituted prejudicial error. *See Jacobs,* 363 N.C. at 825, 689 S.E.2d at 865-66.

## IV. Conclusion

The State introduced sufficient evidence to show that defendant acted with premeditation and deliberation. Therefore, the trial court did not err in denying defendant's motion to dismiss. Additionally, defendant has failed to show that the exclusion of testimony that Mr. Williams was in a gang constituted prejudicial error.

NO ERROR; NO PREJUDICIAL ERROR.

Judges HUNTER, Robert C. and ERVIN concur.