TYSON, Judge.
Markcus Johnson ("Defendant") appeals from judgments entered after a jury found him to be guilty of first-degree murder and of possession of a firearm by a convicted felon. We find no error in the jury's verdicts or in the judgments entered thereon.
I. Background
The State's evidence tended to show on 7 January 2008 at around 11:00 p.m., Charlotte-Mecklenburg Police Officer Jerry Silcox responded to a call at an apartment complex on Farm Pond Lane in Charlotte. Upon arrival, he discovered "medics" attending to Julio Paniagua. Paniagua was lying on the roadway, bleeding from the head. Officer Silcox discovered bullet holes in the side of the building fifteen feet from the roadway where Paniagua was found.
Forensic pathologist Dr. James Sullivan performed an autopsy on Mr. Paniagua on 9 January 2008. He discovered Paniagua had suffered two gunshot wounds : one to the left side of his head and one to his left foot. Dr. Sullivan also observed abrasions on Paniagua's forehead down to his lips and a gash on his forehead, which Dr. Sullivan surmised to have resulted from Paniagua's face-first fall to the roadway. Dr. Sullivan testified Paniagua died from the gunshot wound to the head.
Paniagua's murder remained unsolved until July 2012, when police contacted Diana Omalay, Defendant's ex-girlfriend. Ms. Omalay made a statement to police which led to the arrest of Defendant. Omalay testified Defendant was her boyfriend during January 2008. She testified that on the night of 7 January 2008, Defendant and his friend, "Snoop," were visiting at her apartment. Defendant asked Omalay to take them to the apartments on Farm Pond Lane so he could buy some marijuana. Omalay drove the men to the apartment complex. Defendant sat in the front passenger seat and Snoop sat in the backseat behind the driver.
The complex on Farm Pond Lane has one access drive for entrance and egress. Omalay drove her car to the back of the complex. The men got out, went into an apartment, and returned to the car five to ten minutes later. Defendant returned to the front passenger seat, and Snoop returned to the backseat behind the driver.
As Omalay drove back out of the complex, she saw a slender man walking on the right side of the roadway, the passenger side of the vehicle. The man was walking towards the apartments as Omalay, Defendant and Snoop were traveling away. Omalay testified Defendant said "Hey, hey, hey" and yelled for the man to stop. Defendant told Omalay to stop the car. The man did not say anything in response to Defendant, appeared to pause for a moment, but then continued to move away from the vehicle.
Omalay slowed down and saw Defendant reach his arm out of the car window and shoot. Omalay testified she heard about four shots. She saw Defendant with a gun "like a revolver" that "you put the bullets" in the "cylinder on top." Omalay asked Defendant why he had just shot the man. He told her he would kill her if she told anyone.
Omalay testified she did not stop to check the victim and continued driving to her home. Once at her home, Defendant washed his hands. The three went to Defendant's sister's home, where Omalay shared the events of the evening with Defendant's sister. Defendant got mad, slapped her and again told her he would kill her if she told anyone else.
A few weeks later, Omalay learned the victim, Paniagua, had died. She told Defendant about the victim's death. Defendant repeated he would kill kill her if she told anyone else. Omalay also testified Defendant showed no reaction upon hearing Paniagua had died.
On 10 October 2016, Defendant was indicted for first-degree murder of Julio Paniagua. At trial, Defendant stipulated he was a convicted felon. The jury was instructed on both first- and second-degree murder. The jury convicted Defendant of first-degree murder in 16 CRS 28113 and possession of a firearm by a convicted felon in 16 CRS 28114 on 1 March 2017. Defendant entered notice of appeal in open court.
II. Jurisdiction
This Court has jurisdiction pursuant to N.C. Gen. Stat. §§ 7A-27(b)(1) and 15A-1444(a) (2015).
III. Issue
Defendant's sole issue on appeal challenges the trial court's denial of his motion to dismiss the first-degree murder charge for insufficient evidence of premeditation and deliberation.
IV. Standard of Review
A motion to dismiss is properly denied if the State has produced substantial evidence to show each element of the offense charged and that the defendant is the perpetrator of the offense. State v. McAdoo, 165 N.C. App. 222, 227-28, 598 S.E.2d 227, 231 (2004). In ruling upon a motion to dismiss, the trial court is to consider the evidence "in the light most favorable to the State, and the State is entitled to every reasonable inference to be drawn therefrom." State v. Cox, 367 N.C. 147, 150, 749 S.E.2d 271, 274 (2013) (ellipses and citation omitted). This Court reviews the question de novo. Id. at 151, 749 S.E.2d at 275.
V. Premeditation and Deliberation
Defendant contends the trial court erred by failing to dismiss the charge of first-degree murder due to insufficient evidence of premeditation and deliberation. We disagree.
First-degree murder is the unlawful killing of another human being with malice and with premeditation and deliberation. State v. Haynesworth, 146 N.C. App. 523, 531 553 S.E.2d 103, 109 (2001) ; N.C. Gen. Stat. § 14-17(a) (2015).
Defendant asserts the State's evidence only showed the shooting was a "spur of the moment," unplanned act. Defendant argues this "spur of the moment" shooting cannot have been premeditated and deliberated, and he is not guilty of first-degree murder with specific intent formed after premeditation and deliberation.
"Premeditation means that the act was thought out beforehand for some length of time, however short, but no particular amount of time is necessary for the mental process of premeditation; it is sufficient if the process of premeditation occurred at any point prior to the killing." State v. Hunt, 330 N.C. 425, 427, 410 S.E.2d 478, 480 (1991) (citation omitted).
"Deliberation means an intent to kill carried out in a cool state of blood, in furtherance of a fixed design for revenge or to accomplish an unlawful purpose and not under the influence of a violent passion, suddenly aroused by lawful or just cause or legal provocation." Id.(citation omitted). "Evidence of the defendant's conduct and statements before and after the killing may be considered in determining whether a killing was done with premeditation and deliberation." Id. at 428, 410 S.E.2d at 481 (emphasis supplied) (citation omitted).
This Court has held ample time had elapsed for the defendant to kill with premeditation and deliberation, where the State's evidence showed no provocation on the part of the victim, the defendant kept shooting after the victim fell, and the defendant attempted to hide evidence from the shooting. State v. Horskins, 228 N.C. App. 217, 225-26, 743 S.E.2d 704, 711, disc. review denied, 367 N.C. 273, 752 S.E.2d 481 (2013). Further, the Court found delivering lethal blows after the victim had fallen and been rendered helpless, providing no assistance to the victim, and leaving the victim lying in a parking lot also supported a finding of premeditation and deliberation. Id.
The Court in Horskins recognized "[a]lthough the entire incident took place within a matter of minutes and the shooting within a matter of seconds, no particular amount of time [was] necessary for the mental process of premeditation." Id. at 226, 743 S.E.2d at 711 (emphasis supplied) (citation and quotation marks omitted). This Court concluded the State presented sufficient evidence for the jury to have "reasonably concluded that 'there was sufficient time for the defendant to weigh the consequences of his act.' " Id.(citing Hunt, 330 N.C. at 429, 410 S.E.2d at 481 ).
[P]remeditation and deliberation are not usually susceptible of direct proof, and are, therefore, susceptible of proof by circumstances from which the facts sought to be proven may be inferred. That these essential elements of murder in the first degree may be proven by circumstantial evidence has been repeatedly held by this court.
State v. Faust, 254 N.C. 101, 107, 118 S.E.2d 769, 772-73 (citation and quotation marks omitted), cert. denied, 368 U.S. 851, 7 L.Ed. 2d 49 (1961).
In State v. Childress, 367 N.C. 693, 695, 766 S.E.2d 328, 330 (2014), an attempted first-degree murder case, the Supreme Court set forth illustrative examples of factors a jury may use to infer premeditation and deliberation:
(1) absence of provocation on the part of the deceased, (2) the statements and conduct of the defendant before and after the killing, (3) threats and declarations of the defendant before and during the occurrence giving rise to the death of the deceased, (4) ill will or previous difficulties between the parties, (5) the dealing of lethal blows after the deceased has been felled and rendered helpless, (6) evidence that the killing was done in a brutal manner, [ ] (7) the nature and number of the victim's wounds.... [ (8) ]whether a defendant arrived at the scene of the crime with a weapon and [ (9) ] whether a defendant fired multiple shots. (citations omitted).
In Childress, the defendant drove past the victim's home, shouted "what's popping," and a few minutes later stopped his car in front of the victim's home and sprayed it with bullets. Id. at 693-94, 766 S.E.2d at 329. The Court held considering the factors above, the evidence supported an inference the defendant "deliberately and with premeditation set out to kill" the victim by shooting her on her porch. Id. at 696, 766 S.E.2d at 330.
Here, and viewed in the light most favorable to the State as the non-moving party, the State offered the following circumstantial evidence to support the inference of premeditation and deliberation: (1) Defendant, a convicted felon, arrived at the apartment complex armed with a handgun; (2) there was no provocation by the victim and no evidence Defendant knew the victim or had been previously threatened by him; (3) Defendant told the victim and Omalay, his driver, to stop; (4) Defendant fired multiple shots, striking his victim twice; (5) Defendant left the scene without offering aid to his victim, who had been rendered helpless; and, (6) Defendant covered up his crime by threatening to kill Omalay if she told anyone. See id.
Premeditation may be formed in very short period of time. Hunt, 330 N.C. at 427, 410 S.E.2d at 480. Defendant does not and cannot assert he acted in any manner other than a "cool state of blood." See id. Defendant unlawfully possessed and carried his gun on his trip to buy drugs and formed the intent to kill Mr. Paniagua in the moments he observed Paniagua walking down the roadway, and ordered his driver to stop after Paniagua's refusal to stop at Defendant's direction. Considering all of the evidence in the light most favorable to the State, we hold the State presented substantial evidence of Defendant's guilt of first-degree murder to survive Defendant's motion to dismiss. His assignment of error is overruled.
VI. Conclusion
The trial court correctly denied Defendant's motion to dismiss the first-degree murder charge, after the State presented sufficient evidence of premeditation and deliberation. The jury was instructed on both first- and second-degree murder. Defendant received a fair trial free of errors he preserved and argued on appeal. We find no error in the jury's verdicts or in the judgments entered thereon. It is so ordered.
NO ERROR.
Report per Rule 30(e).
Judges CALABRIA and DAVIS concur.