STATE OF NORTH CAROLINA v. CHRISTOPHER BERNARD HAMMONDS

No. COA11-271

(Filed 17 January 2012)

**1. Appeal and Error—notice of appeal—poorly drafted— certiorari**

A petition for *certiorari* was granted in the discretion of the Court of Appeals where defendant lost his right of appeal through sloppy drafting by counsel and through no fault of his own (the written notice of appeal did not list all the convictions he was attempting to appeal and did not properly name the court to which he was appealing). Failure to issue a writ of *certiorari* would have been manifestly unjust.

STATE v. HAMMONDS

[218 N.C. App. 158 (2012)]

**2. Jury—selection—voir dire reopened—peremptory challenge**

The trial court erred by refusing to remove a juror in a larceny trial where the judge reopened *voir dire* and allowed further questioning of a juror after learning that the juror had lunch with a member of the district attorney's office. Because the judge reopened *voir dire*, defendant had an absolute right to exercise a remaining challenge.

Appeal by defendant from judgments entered 1 July 2010 by Judge Timothy S. Kincaid in Mecklenburg County Superior Court. Heard in the Court of Appeals 15 September 2011.

*Attorney General Roy Cooper, by Assistant Attorney General Thomas D. Henry, for the State.*

*Kevin P. Bradley for defendant-appellant.*

GEER, Judge.

Defendant Christopher Bernard Hammonds appeals from his convictions of felonious larceny of a firearm, misdemeanor larceny, assault on a government officer, and resisting an officer. On appeal, defendant primarily challenges the trial court's refusal to allow defendant, after the jury was impanelled, to exercise a remaining peremptory challenge to excuse a juror who acknowledged having lunch with a friend who was a lawyer in the district attorney's office. *State v. Holden*, 346 N.C. 404, 488 S.E.2d 514 (1997), and *State v. Thomas*, 195 N.C. App. 593, 673 S.E.2d 372, *disc. review denied*, 363 N.C. 662, 685 S.E.2d 800 (2009), are controlling. Under those decisions, because the trial court reopened voir dire and because defendant had not exhausted all of his peremptory challenges, the trial court.was required to allow defendant to exercise a peremptory challenge to excuse the juror. Defendant is, under *Holden* and *Thomas*, entitled to a new trial.

## Facts

The State's evidence tended to show the following facts. On 26 November 2008, Michael Hansen's Cadillac Escalade automobile was parked outside a nightclub in Charlotte, North Carolina. When Mr. Hansen came out of the nightclub around 1:35 a.m., someone had broken into his vehicle and stolen a cell phone and a .45mm handgun left in the car.

Mr. Hansen activated the tracking service associated with his cell phone plan and discovered that his cell phone was at the third house on Lynn Lee Circle. Mr. Hansen then called the police, reported that his cell phone and gun had been stolen, and gave them the location of the cell phone as identified by the locator service.

At approximately 4:30 a.m., four officers of the Charlotte-Mecklenburg police department (Sergeants Jackson and Suarez and Officers Langford and Markley) went to the Lynn Lee Circle address to conduct a knock and talk investigation. When three of the officers knocked on the front door, defendant emerged from the back of the house where Officer Langford was waiting. All four officers then converged on defendant, and Sergeant Suarez asked defendant if he would agree to a pat down search.

After defendant agreed to the pat down, Sergeant Suarez felt what seemed to be another cell phone in defendant's pocket even though defendant was also holding a cell phone in his hand. Defendant did not respond when Sergeant Suarez asked defendant if he would allow her to see the cell phone in his pocket. Sergeant Suarez then walked around the corner of the house, called the Hansens, and asked Mrs. Hansen to call her husband's cell phone.

Sergeant Suarez walked back around the house, and within a minute the cell phone in defendant' pocket began ringing. Sergeant Suarez then moved to handcuff defendant, asking him to put his hands behind his back. Defendant reacted by rushing Sergeant Suarez, swinging his arms. Defendant struggled with three of the officers until the fourth was able to wrestle one of defendant's arms behind his back. In the course of the struggle, Sergeant Suarez was injured when defendant struck her in the nose.

After defendant had been subdued, Sergeant Suarez retrieved the ringing cell phone from defendant's pocket and answered the phone. Mr. Hansen was on the other end of the call and confirmed that Sergeant Suarez was talking on his cell phone. Sergeant Jackson then secured the residence, a search warrant was obtained, and Mr. Hansen's handgun was discovered in a vehicle parked at the residence.

Defendant was indicted for breaking and entering a motor vehicle, two counts of felonious larceny and misdemeanor larceny, two counts of felonious possession of stolen goods and misdemeanor possession of stolen goods, two counts of assault on a government officer, and one count of resisting a public officer. On 1 July 2010, the

STATE v. HAMMONDS

[218 N.C. App. 158 (2012)]

prosecutor dismissed one of the counts of assault on a government officer.

At trial, the jury found defendant not guilty of breaking or entering a motor vehicle, but guilty of assault on a government official, resisting a public officer, larceny of a firearm, and larceny of a cell phone. The trial court concluded that no verdict should be taken on the charges of felonious and misdemeanor possession of stolen goods as those charges merged into the larceny convictions.

The trial court sentenced defendant to a presumptive-range term of 10 to 12 months imprisonment for larceny of a firearm to be followed by a consecutive sentence of 120 days for misdemeanor larceny that in turn was followed by a consecutive sentence of 150 days for assault on a government official and resisting a public officer. Defendant timely appealed to this Court.

## Discussion

[1] We must first address whether defendant's notice of appeal was adequate to appeal the judgments below. N.C. Gen. Stat. § 15A-1448(b) (2011) provides that "[n]otice of appeal shall be given within the time, in the manner and with the effect provided in the rules of appellate procedure."

Rule 4(a) of the North Carolina Rules of Appellate Procedure provides that an appeal in a criminal case may be taken either by "giving oral notice of appeal at trial" or by filing a written notice of appeal within 14 days after entry of judgment. Rule 4(b) provides that any written notice of appeal "shall specify the party or parties taking the appeal; shall designate the judgment or order from which appeal is taken and the court to which appeal is taken . . . ."

In this case, defendant did not give oral notice of appeal at trial, but rather filed a written notice of appeal on 13 July 2010. The notice of appeal specified that it was being filed under the file numbers for the two assault on a government official charges (although one was dismissed), the resisting arrest charge, and the breaking and entering a motor vehicle charge (although the jury had found defendant not guilty of that charge), as well as a file number that does not appear to be related to any of the charges at issue. The notice of appeal did not include the file numbers for the felonious and misdemeanor larceny charges.

The text of the notice of appeal stated:

> NOW COMES the Defendant, Christopher Hammonds, by and through his undersigned attorney, Kenneth D. Snow, and hereby gives notice of appeal to the State of North Carolina Superior Court Division for judgment entered in this case on July 1, 2010. Christopher Hammonds has requested that his case be appointed to the Appellate Defender's Office.

The notice of appeal included a signature line for defendant, but defendant's name was apparently signed and initialed by his trial counsel.

In this case, defendant's counsel filed a written notice of appeal that fails to list all the convictions that defendant is attempting to appeal and fails to properly name the court to which he is appealing. While this Court has held that " 'a mistake in designating the judgment . . . should not result in loss of the appeal as long as the intent to appeal from a specific judgment can be *fairly inferred* from the notice and the appellee is not misled by the mistake[,]' " *Stephenson v. Bartlett*, 177 N.C. App. 239, 241, 628 S.E.2d 442, 443 (2006) (quoting *Von Ramm v. Von Ramm*, 99 N.C. App. 153, 156-57, 392 S.E.2d 422, 424 (1990)), we do not think that an intent to appeal all of defendant's convictions in this instance can be fairly inferred from his written notice of appeal. Accordingly, defendant's written notice of appeal does not comply with Rule 4.

Following that inadequate notice of appeal, defendant's counsel attempted to give oral notice of appeal to the trial court on 2 August 2003. Since that notice was not given "at trial" as required by Rule 4, it also was inadequate. N.C.R. App. P. 4(a)(1).

Our Supreme Court has said that a jurisdictional default, such as a failure to comply with Rule 4, "precludes the appellate court from acting in any manner other than to dismiss the appeal." *Dogwood Dev. & Mgmt. Co. v. White Oak Transp. Co.*, 362 N.C. 191, 197, 657 S.E.2d 361, 365 (2008). Defendant has, however, requested that we exercise our discretion under Rule 21 of the Rules of Appellate Procedure to review his arguments pursuant to a writ of certiorari. Rule 21(a)(1) provides that a writ of certiorari may issue to permit review of judgments and orders of trial tribunals "when the right to prosecute an appeal has been lost by failure to take timely action . . . ." The power to do so is discretionary and may only be done in "appropriate circumstances." *Id.*

Because, in this case, it is readily apparent that defendant has lost his appeal through no fault of his own, but rather as a result of sloppy drafting of counsel and because a failure to issue a writ of certiorari would be manifestly unjust, we exercise our discretion to allow defendant's petition for writ of certiorari and address the merits of defendant's appeal. *See In re I.T.P-L.* 194 N.C. App. 453, 460, 670 S.E.2d 282, 285 (2008) (dismissing appeal based on jurisdictional default but allowing review pursuant to Rule 21 because "the timely, albeit incomplete, notices of appeal together with the amended notices of appeal provide record evidence that Respondents desired to pursue the appeal, understood the nature of the appeal, and cooperated with counsel in filing the notice of appeal" and because allowing review would "avoid penalizing Respondents for their attorneys' errors"), *disc. review denied,* 363 N.C. 581, 681 S.E.2d 783 (2009).

**[2]** Turning to the merits of the appeal, defendant first contends that the trial court erred in refusing to allow him to exercise an unused peremptory challenge after the trial court reopened voir dire following the impanelling of the jury. At trial, just after the lunch break, defendant's trial counsel reported to the trial court that he had seen juror number 8 having lunch with a lawyer from the district attorney's office. Defendant's counsel explained that if he had known of juror number 8's connection with an attorney with the district attorney's office, he "probably would have used one of [his] strikes against them."

The trial court had the bailiff return the jurors to the courtroom and asked them whether any of them had lunch with a member of the district attorney's office. Juror number 8 indicated that he had, but that they had not discussed defendant's case in any way. The trial court then asked the jury to leave and allowed both defendant and the State to ask any questions that they had of juror number 8. Both defendant and the State questioned juror number 8.

After the juror was returned to the jury room, defendant made the following request to the trial court:

> [DEFENSE COUNSEL]: Judge, I certainly didn't want to cause any inconvenience, but I think I have a duty to ask that he be excluded because certainly that is a question, and given that he knew the attorney that intimately to have lunch with them, Judge, I think most of the attorneys would certainly have him removed, and that's a question he was aware of. I'm not saying that he had any conversation, but certainly, Judge, I had two strikes left. I certainly would have removed him. There's

no doubt about that had I known that. So I would ask that the Court consider excluding him, and I say that with all due respect, Judge. I certainly understand the inconvenience, but I would ask that he be removed.

The State, however, argued that defendant should have specifically questioned the jurors regarding any relationship with the district attorney's office during voir dire and that defendant had ample opportunity to question the juror regarding his impartiality.

After hearing arguments, the trial court made the following ruling:

THE COURT: I'll make these findings on the record. Juror No. 8 . . . has been inquired about out of the presence of the other jurors. It appears that [Juror No. 8] had lunch with a member of the district attorney's office, apparently a district attorney that is not associated with the supreme [sic] court division but is associated with the district court division who hasn't had any participation in this case. The juror also indicated he did not talk about this case. The juror also indicated after informing counsel that he did know two attorneys, he did not indicate either of those attorneys were with the district attorney's office. Jurors, by their very nature, generally respond to only what they are asked directly, and it does not appear any further inquiry was made about the practice of the attorneys that this juror knew in particular.

The juror has indicated that he can remain fair and impartial and that his acquaintance would not affect his decision in this case. Only the juror can know whether or not something like that's going to affect their ability to decide this case. Therefore, this court will conclude that the juror is yet fair and impartial and the Court, in its discretion, will deny the motion to remove this juror and replace the same with the alternate.

This Court addressed almost identical facts in *Thomas*. In that case, after the jury was impanelled,

the trial court learned that one of the seated jurors attempted to contact an employee in the District Attorney's Office prior to impanelment. The juror visited the District Attorney's Office with the intention of greeting a friend, but was unsuccessful in his attempts to speak with her. Voir dire was reopened, the trial court questioned the juror, and allowed the parties to do so as well.

195 N.C. App. at 594, 673 S.E.2d at 373. At the end of the voir dire, defense counsel reminded the trial court that he had an unused peremptory challenge remaining that he wished to use to excuse the juror. *Id.* at 595, 673 S.E.2d at 373. The trial court refused the defendant's request on the grounds that because the juror did not speak to his friend in the district attorney's office and did not talk about the case, " 'there would be no prejudice to either party' " by allowing the juror to sit. *Id.*

On appeal, this Court explained that although "[i]t is established that after a jury has been impaneled, further challenge of a juror is a matter within the trial court's discretion," a different rule applies when the trial court reopens voir dire: "However, '[o]nce the trial court reopens the examination of a juror, each party has the *absolute right* to exercise any remaining peremptory challenges to excuse such a juror.' " *Id.* at 596, 673 S.E.2d at 374 (emphasis added) (quoting *Holden*, 346 N.C. at 429, 488 S.E.2d at 527). Because it was undisputed that the trial court did in fact reopen voir dire, this Court held: "As a matter of law, Defendant was entitled to exercise his remaining peremptory challenge," and "the trial court committed reversible error by failing to permit Defendant to use his remaining peremptory challenge." *Id.* The Court, therefore, granted the defendant a new trial. *Id.*

In *Holden*, the authority relied upon by the *Thomas* panel, our Supreme Court concluded that the trial court did not err in allowing the State to exercise a peremptory challenge after the jury had already been impanelled—indeed, the State did not seek excusal of the juror until after the close of the evidence. 346 N.C. at 428, 488 S.E.2d at 526. The Court first pointed out that "the trial court may reopen the examination of a juror after the jury is impaneled and that this decision is within the sound discretion of the trial court." *Id.* at 429, 488 S.E.2d at 527. If, however, the trial court decides to exercise its discretion to reopen voir dire of a juror, then, at that point, " 'each party has *the absolute right* to exercise any remaining peremptory challenges to excuse such a juror." *Id.* (emphasis added) (quoting *State v. Womble*, 343 N.C. 667, 678, 473 S.E.2d 291, 297 (1996)). The Court concluded that the trial court had not abused its discretion in allowing further examination of the juror and, therefore, the State was entitled to exercise its peremptory challenge. *Id.*

Here, as in *Holden* and *Thomas*, it is undisputed that the trial court exercised its discretion to reopen voir dire and allow further

questioning of juror number 8 after the jury had been impanelled. Defendant had peremptory challenges remaining, and he sought to exercise one of those challenges to remove juror number 8. Under *Holden* and *Thomas*, because the trial court chose to reopen voir dire, defendant had an absolute right to do so. Consequently, the trial court committed reversible error in refusing to excuse juror number 8, and *Holden* and *Thomas* mandate that defendant is entitled to a new trial.

New trial.

Judges STROUD and THIGPEN concur.