IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-685

Filed 4 June 2025

Forsyth County, No. 21 CRS 55823

STATE OF NORTH CAROLINA

v.

JONATHAN LAMONT GARDNER

Appeal by Defendant from Judgment entered 4 May 2022 by Judge Robert Broadie in Forsyth County Superior Court. Heard in the Court of Appeals 25 February 2025.

*Attorney General Jeff Jackson, by Assistant Attorney General Raymond W. Goodwin, for the State.*

*Appellate Defender Glenn Gerding, by Assistant Appellate Defender Sterling Rozear, for Defendant-Appellant.*

HAMPSON, Judge.

## Factual and Procedural Background

Jonathan Lamont Gardner (Defendant) appeals from a Judgment entered upon a jury verdict finding him guilty of Assault on a Female. The Record before us, including evidence presented at trial, tends to reflect the following:

On 26 June 2021 at approximately 1 p.m. to 2 p.m., Defendant and Lovella Collins, Defendant's girlfriend, were at Defendant's apartment when "an unexpected guest" arrived. This guest was "a female friend" of Defendant. The three began

talking and "a lot of disagreements" ensued. After about twenty minutes, the friend left and Collins decided to leave shortly thereafter.

According to Collins, Defendant began yelling at her for letting the friend into the apartment. After some discussion between the two, Defendant physically threw Collins out of the apartment. Collins went back into the apartment and Defendant continued "screaming and hollering." Defendant then went to Collins and "started choking" her with his hands around her neck. Collins testified Defendant applied "a lot of force[.]" Eventually, Defendant let Collins go and she fell to the floor, struggling to breathe. Collins left the apartment to go to the hospital. At the emergency room, medical personnel called the police.

At trial, the State and its witness repeatedly referred to Defendant as "Mr.", "he", and "him", with no objection by defense counsel. In one such exchange, Collins described beginning her relationship with Defendant: "He [Defendant] had got him a place after that one year and moved out of his mom['s] house. Got his own place. Told me he had his place and that's when I came by. That's how we started talking, when he got his own apartment." Indeed, defense counsel likewise repeatedly and exclusively referred to Defendant using masculine pronouns. During cross-examination of Collins, defense counsel asked: "Mr. Gardner is not a large man, he is not very big and tall, is that correct?"

At the close of the State's case in chief, Defendant moved to dismiss the charge for insufficient evidence. The trial court denied the Motion. Defendant elected not

to present any evidence. At the close of all evidence, Defendant again moved to dismiss the charge. Defendant argued specifically that the State had not presented sufficient evidence Defendant was a male. The trial court again denied Defendant's Motion.

On 4 May 2023, the jury returned a verdict finding Defendant guilty of Assault on a Female. Defendant orally entered Notice of Appeal the same day. The trial court entered a Judgment sentencing Defendant to 75 days of imprisonment and suspended that sentence, placing Defendant on supervised probation for 18 months. The trial court also ordered Defendant have no contact with Collins and to participate in a substance abuse program.

## Appellate Jurisdiction

"Notice of appeal shall be given within the time, in the manner and with the effect provided in the rules of appellate procedure." N.C. Gen. Stat. § 15A-1448(b) (2023). Rule 4(a) of the North Carolina Rules of Appellate Procedure provides "appeal from a *judgment* or order of a superior or district court" may be taken by "giving oral notice of appeal at trial[.]" (emphasis added). "An oral notice of appeal given before entry of the final judgment violates Rule 4 and does not give this Court jurisdiction to hear the defendant's direct appeal." *State v. Jones*, _ N.C. App. _, _, 909 S.E.2d 373, 376 (2024) (citing *State v. Smith*, 292 N.C. App. 662, 665, 898 S.E.2d 909, 912 (2024) and *State v. Lopez*, 264 N.C. App. 496, 503, 826 S.E.2d 498, 503 (2019)).

The Record in this case reflects that after the jury announced its verdict but

prior to sentencing, counsel for Defendant stated, "At the appropriate time we would respectfully give notice of appeal[.]" The trial court responded, "So noted." Thus, as Defendant prematurely entered oral Notice of Appeal before entry of the final Judgment in violation of Rule 4, this Court does not have jurisdiction to hear Defendant's appeal. *See Jones*, 909 S.E.2d at 376; *Lopez*, 264 N.C. App. at 503, 826 S.E.2d at 503. Defendant, acknowledging this defect, filed a petition for writ of certiorari to allow us to hear this appeal. "The writ of certiorari may be issued in appropriate circumstances by either appellate court to permit review of the judgments and orders of trial tribunals when the right to prosecute an appeal has been lost by failure to take timely action[.]" N.C.R. App. P. 21(a)(1) (2024). Here, it is clear Defendant expressed an intent to appeal although he failed to do so at the proper time. In our discretion, we allow Defendant's Petition for Writ of Certiorari and reach the merits of his appeal.

Our dissenting colleague's concerns about this issue of certiorari are misplaced. Indeed, although he points to *Cryan v. National Council of Young Men's Christian Associations of United States*, 384 N.C. 569, 887 S.E.2d 848 (2023), for the proposition that we are required to find error was probably committed before granting certiorari, a full reading of that case reveals our Supreme Court affirmed this Court's grant of certiorari where the determination looked much the same as here. *Id.* at 573, 887 S.E.2d at 851. In considering whether to grant the defendant's petition for writ of certiorari, this Court in *Cryan* noted certiorari is issued only upon a showing of

appropriate circumstances, such as where "there is merit to an appellant's substantive arguments and it is in the interests of justice to treat an appeal as a petition for writ of certiorari." *Cryan v. Nat'l Couns. of Young Men's Christian Assocs. of United States*, 280 N.C. App. 309, 315, 867 S.E.2d 354, 359 (2021) (quoting *Zaliagiris v. Zaliagiris*, 164 N.C. App. 602, 606, 596 S.E.2d 285, 289 (2004)). In short, *Cryan* simply reaffirms our discretion to allow petitions for writ of certiorari in appropriate cases—the scope of which is guided by our precedent and our understanding of the equitable concerns in each case.

To that end, this Court has routinely granted certiorari in precisely this type of case: where a defendant's intent to appeal was clear and their right to appeal would otherwise be lost through a technical mistake by their attorney. *See e.g.*, *State v. Springle*, 244 N.C. App. 760, 762-64, 781 S.E.2d 518, 520-21 (2016) (granting certiorari where defendant's trial counsel prepared notice of appeal omitting certificate of service on the State); *State v. Smith*, 292 N.C. App. 662, 665, 898 S.E.2d 909, 912 (2024) (granting certiorari where defendant's trial counsel entered oral notice of appeal before entry of final judgment); *Jones*, _ N.C. App. 909 S.E.2d at 376 (same); *Lopez*, 264 N.C. App. at 503-04, 826 S.E.2d at 503-04 (same); *State v. Robinson*, 279 N.C. App. 643, 645, 865 S.E.2d 745, 748 (2021) (granting certiorari where defendant's trial counsel failed to give timely notice of appeal from denial of motion to suppress); *State v. Perez*, 275 N.C. App. 860, 865, 854 S.E.2d 15, 20 (2020) (granting certiorari where defendant's trial counsel entered oral notice of appeal at

sex offender registration hearing rather than at trial); *State v. Holanek*, 242 N.C. App. 633, 640, 776 S.E.2d 225, 231-32 (2015) (granting certiorari where defendant's trial counsel entered oral notice of appeal appearing before the trial court six days after entry of judgment); *State v. Hammonds*, 218 N.C. App. 158, 162-63, 720 S.E.2d 820, 822-23 (2012) (granting certiorari where defendant's trial counsel failed to list all convictions from which defendant was appealing in written notice of appeal and attempted to enter oral notice of appeal several days after trial); *State v. Price*, 290 N.C. App. 480, 891 S.E.2d 661, 2023 WL 5938676, \*2 (2023) (unpublished) (granting certiorari where defendant's trial counsel entered oral notice of appeal before entry of final judgment); *State v. O'Neil*, _ N.C. App. _, 905 S.E.2d 924, 2024 WL 4356330, \*1-\*2 (2024) (granting certiorari where defendant's written notice of appeal was untimely filed).[1]

These decisions serve as guideposts to help us exercise our discretion and determine in which cases a grant of certiorari is appropriate. The consistent through-line of the above cases demonstrates this Court has repeatedly concluded that minor, technical errors by a defendant's attorney can be such circumstances—not that it necessarily is or always must be. The routineness of this type of grant is far from

---

[1] While our dissenting colleague takes issue with the longstanding precedent of "panels" of this Court granting certiorari in their discretion, such is the operation of this Court. Indeed, while this Court is authorized to sit *en banc*, by statute this Court operates in three-judge panels. N.C. Gen. Stat. § 7A-16 (2023). There is nothing inherently suspect about a panel of our Court deciding a case or petition.

creating a "per se rule," as the dissent asserts. Rather, it is a reflection of the fact that many members of this Court have long agreed this situation is an "appropriate circumstance" qualifying for relief. Some may disagree and, indeed, they are allowed to do so because this rule is *discretionary*. Granting certiorari in this type of case protects defendants, whose liberty is at stake, from losing their right to judicial review "through no fault of [their] own[.]" *Hammonds*, 218 N.C. App. at 163, 720 S.E.2d at 823. Indeed, in these cases, "failure to issue a writ of certiorari would be manifestly unjust[.]" *Id.* As such, this is one of the "appropriate circumstances" in which we may, in our discretion, issue our writ of certiorari. *See* N.C.R. App. P. 21(a)(1) (2024); N.C. Gen. Stat. § 7A-32(c) (2023).

Despite our dissenting colleague's assertions, we are in no way creating a per se rule. To the contrary, our colleague creates a per se rule requiring a showing that error was committed below. However, recognizing the equities in this situation, this Court does not necessarily require a showing of absolute merit on a defendant's part. Moreover, "merit" does not necessarily mean a defendant will win their appeal. "Indeed, it is not uncommon for our Court to issue a writ in order to review a defendant's appeal where there is a jurisdictional defect in his or her notice of appeal, where the State has not been prejudiced by the defect, *even where said defendant's appeal has little, if any merit.*" *State v. Ore*, 283 N.C. App. 524, 535, 874 S.E.2d 222, 230 (2022) (Dillon, J., concurring) (emphasis in original), *vacated in part, State v. Ore*, 383 N.C. 676, 678, 880 S.E.2d 677, 678 (2022) ("The concurring opinions in the Court

of Appeals [regarding certiorari] . . . accurately reflect the law."). *See also State v. Powers*, 288 N.C. App. 272, 884 S.E.2d 505, 2023 WL 2770243, *3 (2023) (unpublished) ("The State does not argue that [defendant]'s appeal is so lacking in merit that allowing his petition would amount to an abuse of discretion; to the contrary, the State acknowledges that we have discretion to grant *certiorari* review in this case. Consistent with the reasoning set forth in the above caselaw and in light of the State's concession, we dismiss [defendant]'s appeal and grant his petition for writ of *certiorari* in our discretion." (citing *Robinson*, 279 N.C. App. at 645, 865 S.E.2d at 748)).

For example, in several of the above cases, this Court granted certiorari but concluded there had been no error in the defendant's trial or otherwise dismissed the appeal after reviewing the merits. *Smith*, 292 N.C. App. at 669, 898 S.E.2d at 914; *Jones*, 909 S.E.2d at 378; *Robinson*, 279 N.C. App. at 647, 865 S.E.2d at 749; *Price*, 2023 WL 5938676 at *6; *O'Neil*, 2024 WL 4356330 at *2. Sometimes, as here, there is good reason for doing so: "Our Court does not always allow such writs, especially where the issues raised have little merit. But we might choose to do so, for instance, where considering and resolving the issues would promote judicial economy by eliminating the need for the trial court to have to consider a subsequent motion for appropriate relief or ineffective assistance of counsel." *Ore*, 283 N.C. App. at 535, 874 S.E.2d at 230 (Dillon, J., concurring).

Such was also the case in one of the opinions our Supreme Court cited in *Cryan*

- 8 -

for the proposition that a writ of certiorari "should only issue if the petitioner can show merit or that error was probably committed below." 384 N.C. at 572, 887 S.E.2d at 851 (quotation marks omitted) (citing *State v. Ricks*, 378 N.C. 737, 741, 862 S.E.2d 835, 839 (2021) and *State v. Grundler*, 251 N.C. 177, 189, 111 S.E.2d 1, 9 (1959)). In *Grundler*, our Supreme Court allowed a petition for writ of certiorari despite expressly finding the trial court had not committed any error: "We are constrained to allow the petition. We wish to emphasize that we are not induced so to do by reason of any error on the part of [the trial court], for there was none." *Grundler*, 251 N.C. at 189, 111 S.E.2d at 9. The Supreme Court allowed the petition, however, in order to address the merits of the defendant's arguments. *Id.* Thus, our caselaw is clear that "merit" is not synonymous with a likelihood of success on appeal.[2]

Further, our grant of certiorari is neither *sua sponte* nor pursuant to Rule 2,

---

[2] Indeed, in an early decision, our Supreme Court explained:

> The writ of *certiorari* is an extraordinary remedy, and is said to be grantable at the discretion of the Court. The meaning of this is, that it is not a matter of right, like a writ of error or an appeal. It is very often used as a substitute for an appeal, and in so using it, the courts have exercised their discretion, in such a manner as, on the one hand, to prevent a party from being deprived of a just defense, and on the other, to prevent its being made a mere instrument of delay. Where a party has lost his appeal by the neglect of an officer of the law, the contrivance of the opposite party, or the improper conduct of the inferior court, the cause will be re-examined by the Superior Court upon a writ of *certiorari,* without reference to the merits of the case. This is put upon the ground that he has been deprived of a right, to wit, of an appeal, without his fault[.]

*McConnell v. Caldwell*, 51 N.C. 469, 470 (1859); *see also* N.C. Gen. Stat. § 1-269 (2023).

which allows us to suspend the Rules of Appellate Procedure in order to prevent "manifest injustice." Rather, in this case a petition for writ of certiorari was filed because Defendant's right to appeal had been lost—a circumstance expressly set out in our Rules of Appellate Procedure. *See* N.C.R. App. P. 21(a)(1) (2024) ("The writ of certiorari may be issued in appropriate circumstances by either appellate court to permit review of the judgments and orders of trial tribunals when the right to prosecute an appeal has been lost by failure to take timely action. . ."). And—although the State opposes issuance of the writ in this case—the State does not argue granting certiorari would be an abuse of our discretion but expressly concedes: "it is within this court's discretion whether to allow the petition for writ of certiorari to review the judgment[.]"[3]

Our caselaw recognizes this Court should err on the side of adjudicating these cases on the merits rather than punishing defendants for mistakes over which they had no control—particularly where, as here, the defendant's intent to appeal was clear. *See Springle*, 244 N.C. App. at 763, 781 S.E.2d at 521 ("[A] defect in a notice of appeal 'should not result in loss of the appeal as long as the intent to appeal . . . can be fairly inferred from the notice and the appellee is not misled by the mistake.' " (quoting *Phelps Staffing, LLC v. S.C. Phelps, Inc.*, 217 N.C. App. 403, 410, 720 S.E.2d 785, 791 (2011) (citation omitted)); *Robinson*, 279 N.C. App. at 645, 865 S.E.2d at 748

---

[3] The State's opposition rests on whether Defendant preserved a constitutional issue in the trial court. We address that issue below.

("Because defendant has lost the right to appeal without fault, we dismiss his appeal and exercise our discretion to grant defendant's petition for *writ of certiorari* and address the merits of defendant's appeal.").

## Issues

The issues on appeal are whether: (I) Defendant's constitutional claims are preserved for our review; (II) the trial court erred by denying Defendant's Motions to Dismiss; and (III) the Record is sufficient to review Defendant's ineffective assistance of counsel (IAC) claim on direct review.

## Analysis

I.    Constitutional Claims

Defendant raises two constitutional claims regarding his conviction. First, he argues the statute under which he was convicted is unconstitutionally vague. Second, he contends the provision under which he was convicted impermissibly discriminates on the basis of sex. We do not reach the merits of either argument as they are waived.

Our Courts have consistently stated, "a constitutional question which is not raised and passed upon in the trial court will not ordinarily be considered on appeal." *State v. Hunter*, 305 N.C. 106, 112, 286 S.E.2d 535, 539 (1982) (citations omitted); *see also State v. Chapman*, 359 N.C. 328, 366, 611 S.E.2d 794, 822 (2005) ("[C]onstitutional error will not be considered for the first time on appeal." (citations omitted)). Indeed, "Constitutional errors not raised by objection at trial are deemed waived on appeal." *State v. Forte*, 257 N.C. App. 505, 511, 810 S.E.2d 339, 343, *disc.*

*rev. denied*, 371 N.C. 339, 813 S.E.2d 858 (2018). The Record before us reveals Defendant made no objection or argument as to either constitutional claim before the trial court. Thus, consistent with our caselaw, we conclude Defendant's constitutional claims are waived. Defendant argues, however, this Court should invoke Rule 2 of the North Carolina Rules of Appellate Procedure to adjudicate the merits of his claims.

Rule 2 of our Rules of Appellate Procedures provides this Court may, "[t]o prevent manifest injustice to a party, or to expedite decision in the public interest, . . . suspend or vary the requirements or provisions of any of these rules in a case pending before it[.]" "Rule 2 discretion should be exercised 'cautiously' and only in 'exceptional circumstances.' " *State v. Baldwin*, 240 N.C. App. 413, 422, 770 S.E.2d 167, 174 (2015) (quoting *State v. Williams*, 201 N.C. App. 161, 173, 689 S.E.2d 412, 418 (2009)). "[W]hether an appellant has demonstrated that his matter is the rare case meriting suspension of our appellate rules is always a discretionary determination to be made on a case-by-case basis." *State v. Campbell*, 369 N.C. 599, 603, 799 S.E.2d 600, 603 (2017) (citations omitted), *disc. rev. allowed on add'l issues*, 371 N.C. 343, 813 S.E.2d 849 (2018). After reviewing Defendant's arguments and the Record on appeal, Defendant has not shown extraordinary circumstances meriting the invocation of Rule 2. In the exercise of our discretion, we decline to invoke Rule 2 and dismiss Defendant's arguments as to the constitutionality of the underlying statute.

II.     Motions to Dismiss

"This Court reviews the trial court's denial of a motion to dismiss *de novo*." *State v. Smith*, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007) (citation omitted). "Upon defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense.  If so, the motion is properly denied." *State v. Fritsch*, 351 N.C. 373, 378, 526 S.E.2d 451, 455 (2000) (citation omitted).  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Brown*, 310 N.C. 563, 566, 313 S.E.2d 585, 587 (1984) (citation omitted).  "If the evidence is sufficient only to raise a suspicion or conjecture as to either the commission of the offense or the identity of the defendant as the perpetrator of it, the motion [to dismiss] should be allowed." *Fritsch*, 351 N.C. at 378, 526 S.E.2d at 455 (citation omitted).   Evidence may be either direct evidence, "that which is immediately applied to the fact to be proved", or circumstantial evidence, "that which is indirectly applied, by means of circumstances from which the existence of the principal fact may reasonably be deduced or inferred." *State v. Wright*, 275 N.C. 242, 249-50, 166 S.E.2d 681, 686 (1969).  "In making its determination, the trial court must consider all evidence admitted, whether competent or incompetent, in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor." *State v. Rose*, 339 N.C. 172, 192, 451

S.E.2d 211, 223 (1994) (citation omitted).

Defendant contends the trial court erred by denying his Motions to Dismiss the charge of Assault on a Female. Our statutes make it unlawful for a defendant, "in the course of the assault, assault and battery, or affray," to "[a]ssault[] a female, he being a male person at least 18 years of age[.]" N.C. Gen. Stat. § 14-33(c)(2) (2023). Thus, the State must prove beyond a reasonable doubt that a defendant (1) assaulted (2) a female, and the defendant was (3) male and (4) at least 18 years of age. In this case, Defendant contends there was insufficient evidence only as to the element of his sex. We disagree.

Every party in this case, including the State, Collins—its witness—, and defense counsel repeatedly referred to Defendant as "Mr." and using masculine pronouns. At no point did defense counsel object to these pronouns or characterizations. Indeed, defense counsel, in cross-examining Collins, asked questions such as: "I mean, you were in a relationship with him [Defendant], right?" and "Now, the lady came to talk to him. You didn't have a gentleman come to speak to you, right?" and "And that was a female friend of Mr. Gardner's, right?" Defense counsel also asked: "Mr. Gardner is not a large man, he is not very big and tall, is that correct?" Collins answered affirmatively to each question. Further, Collins— the only witness presented at trial—consistently testified about Defendant using masculine pronouns, for example: "He [Defendant] was the one that kept saying it was my fault for opening the door. Me and him standing there screaming and

shouting" and "No, I didn't say he came up behind me. He came in front of me like this" and "He grabbed me by my neck." Defense counsel also played a recording of Collins' statement to police following the incident in which she told the officer, "He [Defendant] put his hands around my neck[.]" Although this evidence is circumstantial, it is sufficient to go to the jury. *See State v. Davy*, 100 N.C. App. 551, 556, 397 S.E.2d 634, 636-37 (1990) ("In order to overcome a motion to dismiss, the State must introduce more than a scintilla of evidence of each essential element of the offense[.]").

Thus, the evidence, taken in the light most favorable to the State, could support an inference Defendant is male. Therefore, there was sufficient evidence to submit the charge to the jury. Consequently, the trial court did not err in denying Defendant's Motions to Dismiss.

III.    Ineffective Assistance of Counsel

Defendant also contends his trial counsel was constitutionally deficient based on her failure to raise the above-noted constitutional challenges to the Assault on a Female statute. In general, claims of IAC should be considered through motions for appropriate relief and not on direct appeal. *See State v. Dockery*, 78 N.C. App. 190, 192, 336 S.E.2d 719, 721 (1985) ("The accepted practice is to raise claims of ineffective assistance of counsel in post-conviction proceedings, rather than direct appeal."); *State v. Ware*, 125 N.C. App. 695, 697, 482 S.E.2d 14, 16 (1997) (dismissing the defendant's appeal because issues could not be determined from the record on appeal

and stating that to "properly advance these arguments, defendant must move for appropriate relief pursuant to G.S. 15A-1415[.]").  A motion for appropriate relief is preferable to direct appeal because in order to

> defend against ineffective assistance of counsel allegations, the State must rely on information provided by defendant to trial counsel, as well as defendant's thoughts, concerns, and demeanor. [O]nly when all aspects of the relationship are explored can it be determined whether counsel was reasonably likely to render effective assistance.

*State v. Buckner*, 351 N.C. 401, 412, 527 S.E.2d 307, 314 (2000) (citations and quotation marks omitted).  "IAC claims brought on direct review will be decided on the merits when the cold record reveals that no further investigation is required, i.e., claims that may be developed and argued without such ancillary procedures as the appointment of investigators or an evidentiary hearing."  *State v. Fair*, 354 N.C. 131, 166, 557 S.E.2d 500, 524 (2001) (citations omitted).  However, "should the reviewing court determine that IAC claims have been prematurely asserted on direct appeal, it shall dismiss those claims without prejudice to the defendant's right to reassert them during a subsequent MAR proceeding."  *Id.* at 167, 557 S.E.2d at 525 (citation omitted).

In order to prevail on an IAC claim, Defendant "must show that counsel's representation fell below an objective standard of reasonableness" and "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland v. Washington*, 466 U.S. 668, 688,

694, 104 S. Ct. 2052, 2064, 2068, 80 L. Ed. 2d 674, 693, 698 (1984); *see also State v. Braswell*, 312 N.C. 553, 562-63, 324 S.E.2d 241, 248 (1985) (adopting *Strickland* standard for IAC claims under N.C. Const. art. I, §§ 19, 23). Here, we are unable to decide Defendant's IAC claim based on the "cold record" on appeal. *Fair*, 354 N.C. at 166, 557 S.E.2d at 524 (citations omitted). We thus conclude "further development of the facts would be required before application of the *Strickland* test[.]" *State v. Allen*, 360 N.C. 297, 316, 626 S.E.2d 271, 286 (2006) (citation omitted). Therefore, we dismiss any IAC claims without prejudice to permit Defendant to pursue a motion for appropriate relief in the trial court.

## **Conclusion**

Accordingly, for the foregoing reasons, we conclude there was no error in Defendant's trial and affirm the Judgment. We dismiss Defendant's ineffective assistance of counsel claim without prejudice to the filing of a motion for appropriate relief.

NO ERROR IN PART; DISMISSED WITHOUT PREJUDICE IN PART.

Chief Judge DILLON concurs.

Judge FREEMAN concurs in part and dissents in part by separate opinion.

No. COA24-685 – *State v. Gardner*

FREEMAN, Judge, concurring in part and dissenting in part.

I concur with the majority's reasoning and conclusions as to the merits of defendant's arguments. However, because defendant's notice of appeal was defective, binding precedent from our Supreme Court instructs us that we cannot reach the merits unless defendant's petition for writ of certiorari establishes both probable error and extraordinary circumstances. As defendant's petition establishes neither, this Court should deny his petition and dismiss his appeal. Because I do not agree with the majority's decision to reach and address the merits of defendant's purported appeal, I respectfully dissent from the majority's grant of certiorari.

Our Supreme Court recently stated:

> The writ of certiorari is one of the prerogative writs that the Court of Appeals may issue in aid of its own jurisdiction. It is intended as an extraordinary remedial writ to correct errors of law.
>
> The procedure governing writs of certiorari is found in Rule 21 of the Rules of Appellate Procedure. But Rule 21 does not prevent the Court of Appeals from issuing writs of certiorari or have any bearing upon the decision as to whether a writ of certiorari should be issued. Instead, the decision to issue a writ is governed solely by statute and by common law.

*Cryan v. Nat'l Council of Young Men's Christian Ass'ns of U.S.*, 384 N.C. 569, 572 (2023) (cleaned up). While our General Statutes grant this Court authority to issue the writ of certiorari, the "practice and procedure shall be provided by statute or rule of the Supreme Court, or, in the absence of statute or rule, according to the practice

and procedure of the common law." N.C.G.S. § 7A-32(c) (2023). The common law governing the issuance of the writ has long required two things "to appear on application for *certiorari*: [f]irst, diligence in prosecuting the appeal . . . ; and, second, merit, or that probable error was committed on the hearing." *State v. Angel*, 194 N.C. 715, 717 (1927). While certiorari "is a discretionary writ," it is "to be issued *only* for good or sufficient cause shown, and it is not one to which the moving party is entitled as a matter of right." *Womble v. Moncure Mill & Gin Co.*, 194 N.C. 577, 579 (1927) (emphasis added).

Rather, "the party seeking it is required . . . to show merit or that he has reasonable grounds for asking that the case be brought up and reviewed on appeal." *In re Snelgrove*, 208 N.C. 670, 671–72 (1935). "A petition for the writ *must* show merit or that error was probably committed below." *State v. Grundler*, 251 N.C. 177, 189 (1959) (emphasis added). " 'A writ of certiorari is not intended as a substitute for a notice of appeal' because such a practice would 'render meaningless the rules governing the time and manner of noticing appeals.' " *State v. Ricks*, 378 N.C. 737, 741 (2021) (quoting *State v. Bishop*, 255 N.C. App. 767, 769 (2017)).

In other words:

> Our precedent establishes a two-factor test to assess whether certiorari review by an appellate court is appropriate. First, a writ of certiorari should issue *only* if the petitioner can show merit or that error was probably committed below. This step weighs the likelihood that there was some error of law in the case.

> Second, a writ of certiorari should issue *only* if there are extraordinary circumstances to justify it. We require extraordinary circumstances because a writ of certiorari is not intended as a substitute for a notice of appeal. If courts issued writs of certiorari solely on the showing of some error below, it would render meaningless the rules governing the time and manner of noticing appeals.
>
> There is no fixed list of extraordinary circumstances that warrant certiorari review, but this factor generally requires a showing of substantial harm, considerable waste of judicial resources, or wide-reaching issues of justice and liberty at stake.
>
> Ultimately, the decision to issue a writ of certiorari rests in the sound discretion of the presiding court. Thus, when the Court of Appeals issues a writ of certiorari, we review solely for abuse of discretion, examining whether the decision was manifestly unsupported by reason, or so arbitrary that it could not have been the result of a reasoned decision.

*Cryan*, 384 N.C. at 572–73 (emphasis added) (cleaned up).

Here, the majority acknowledges this Court does not have jurisdiction to consider defendant's appeal but issues the writ in its "discretion" without applying the two-factor test. *See In re S.D.H.*, 908 S.E.2d 868, 874 (N.C. Ct. App. 2024) ("A petitioner *must* satisfy a two-part test before we will issue a PWC." (emphasis added)). It does so in direct contravention of our common law as expressed by our Supreme Court. This Court may not ignore binding Supreme Court precedent and

3

label such conduct an exercise of its "discretion."[4] While our issuance of the writ is reviewed "solely for abuse of discretion," *id.* at 573, "[a]n error of law constitutes an abuse of discretion," *Slattery v. Appy City, LLC*, 385 N.C. 726, 729 (2024), and this Court abuses its discretion when it fails to apply a legal test mandated by our Supreme Court.

Rather than engage with our Supreme Court's precedent in *Cryan*, the majority asserts that because "[t]his Court has routinely granted certiorari in precisely this type of case," my concerns are "misplaced." While I agree with my colleagues that adjudication on the merits is preferable where a criminal defendant has lost their right to appeal due to their attorney's technical error, our preferences may not trump Supreme Court precedent. The majority's approach is in effect a *per se* rule that, under these circumstances, the writ will issue regardless of any showing of merit.

There is no language in *Cryan* that permits this Court to pick and choose when to apply the test and there is no precedent from our Supreme Court supporting this *per se* rule. As troubling as my colleagues' refusal to engage with *Cryan* is, the majority's apparent belief that the *per se* rule is legally sound because this Court— or, more accurately, a *panel* of this Court—routinely applies it is even more

---

[4] The discretionary nature of certiorari does not render it outside the bounds of legal tests or frameworks. This Court routinely reviews the discretionary decisions of trial courts, such as those under Rule 403, to ensure the decision was made in accordance with the applicable legal frameworks.

concerning. The repetition of an error does not transform that error into good law.

If my colleagues have any remaining doubt as to the applicability of *Cryan* or the two-part test to criminal cases, I respectfully direct them to our Supreme Court's unanimous decision in *State v. Lancaster*, 385 N.C. 459 (2023), decided only months after *Cryan*. There, the Supreme Court reviewed an opinion of this Court in which the majority of our Court noted "it [was] not apparent from the record that Defendant properly noticed his appeal." *State v. Lancaster*, 284 N.C. App. 465, 466 n.1 (2022)*, rev'd*, 385 N.C. 459 (2023). This Court—in a footnote and apparently sua sponte—issued the writ of certiorari "in aid of [its] jurisdiction" without any elaboration or analysis. *Id.* Our Supreme Court reversed this Court's opinion on the merits and specifically addressed this Court's issuance of the writ:

> The Court of Appeals noted that it was "not apparent from the record that [d]efendant properly noticed his appeal," but that court nevertheless issued a writ of certiorari to remedy any jurisdictional question. *State v. Lancaster*, 284 N.C. App. 465, 466 n.1, 876 S.E.2d 101 (2022). Although the State has not argued that the Court of Appeals abused its discretion in issuing this writ, "a writ of certiorari 'is not intended as a substitute for a notice of appeal.'" *Cryan v. Nat'l Council of YMCAs*, 384 N.C. 569, 573, 887 S.E.2d 848 (2023) (quoting *State v. Ricks*, 378 N.C. 737, 741, 862 S.E.2d 835 (2021)). This is so because "[i]f courts issued writs of certiorari solely on the showing of some error below, it would 'render meaningless the rules governing the time and manner of noticing appeals.'" *Id.* (quoting *Ricks*, 378 N.C. at 741, 862 S.E.2d 835).

*State v. Lancaster*, 385 N.C. at 460 n.1.

This admonishment indicates that my concerns regarding the majority's

approach are unanimously shared by our Supreme Court—which is unsurprising given my position is informed by that Court's precedent, not this Court's practice. Unless our Supreme Court says otherwise, I am bound to follow *Cryan*'s test.

The *per se* rule shrugs off our Supreme Court's precedent because it effectively entitles petitioners in these circumstances to certiorari as a matter of right—but only if that petitioner's case falls to a panel applying the *per se* rule. On the other hand, if that petitioner's case falls to a panel properly applying the two-part test, their petition may be denied. Although I believe *Cryan* is crystal clear in its articulation of the two-part test and its universal applicability, this case demonstrates that at least some of my colleagues prefer to eschew the test in favor of a *per se* rule. To ensure even-handed treatment of parties and consistent application of the law, I would invite our Supreme Court to revisit this issue and provide further guidance.

When binding precedent establishes a two-factor test to assess whether certiorari review by an appellate court is appropriate, following the test in each case is the only way to ensure fairness to all who petition for writ of certiorari. Instead of ignoring binding precedent and effectively treating defendant's petition as a substitute for proper notice of appeal, I would deny defendant's petition for writ of certiorari and dismiss defendant's appeal. Accordingly, I respectfully dissent from the majority's decision to reach the merits of defendant's purported appeal.