An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-307

Filed 3 December 2025

Wake County, No. 22CR051714-950

STATE OF NORTH CAROLINA

v.

PETRA K. GIRADO, Defendant.

Appeal by defendant from judgment entered 14 February 2024 by Judge William W. Bland in Wayne County Superior Court. Heard in the Court of Appeals 9 September 2025.

> *Appellate Defender Glenn Gerding, by Assistant Appellate Defender Jillian C. Franke, for defendant-appellant.*

> *Attorney General Jeff N. Jackson, by Assistant Attorney General Michelle B. Harris, for the State.*

FLOOD, Judge.

Defendant Petra K. Girado appeals from the trial court's judgment finding her guilty of misdemeanor larceny, simple assault, and disorderly conduct. On appeal, Defendant argues the trial court erred: first, by denying her motion to dismiss the misdemeanor larceny charge, where there was insufficient evidence of Defendant's

intent to permanently deprive the owner of her property; second, by assigning a longer period of supervised probation than mandated by North Carolina statute; and third, by granting a restitution award against Defendant, where there was insufficient evidence to support such award. Upon careful review, we hold the trial court did not err in denying Defendant's motion to dismiss where the State presented sufficient evidence of intent to permanently deprive through witness testimony, such that it was for the jury to decide; however, we hold the trial court erred by failing to make the necessary findings of fact when it ordered a longer probation period, and by awarding $700 in restitution without supporting evidence.

## I. Factual and Procedural Background

On 19 April 2022, Defendant drove to Funky Fresh Donuts, a local doughnut shop Defendant frequented, to place and pick up an order of doughnuts. Upon arrival, Defendant entered the establishment, placed her order, paid, and then left the shop. Defendant, however, immediately went back inside to place another order. As Defendant re-entered the shop, Defendant noticed Braen Yates exiting the shop with an employee. Ms. Yates had a four-year-old child with J.J., the man Defendant was seeing at the time.

Once Defendant left the shop for the second time, Ms. Yates was still outside in the parking lot. A verbal altercation broke out between the two women, centering around Ms. Yates's son and the women's overlapping relationships with J.J. The altercation subsequently turned physical, and as the two women "tussl[ed],"

Defendant lost her glasses and fell on top of Ms. Yates, while pulling Ms. Yate's hair and hitting her in the face. Eventually, Ms. Yates began to pull away from Defendant's grasp, and the two women separated.

During the fight, police had been called to Funky Fresh Donuts, and Officer Michael Whitfield responded to the call. Although Defendant had already left the scene by the time the police arrived, Ms. Yates was still present at the scene, and she recounted the events to Officer Whitfield, who provided an incident report to Investigator James Sturgill.

After the fight had ended, Defendant had grabbed items off the ground that had fallen from the two women during the altercation. These items consisted of Defendant's glasses, Ms. Yates's necklace, and a lock of Ms. Yates's hair. Defendant then got into her car, drove to a nearby gas station, and parked. While sitting in her car, Defendant took a photo of Ms. Yates's necklace and lock of hair, and posted the photo to her Facebook page, with the caption: "somebody tell that girl she can have her brittle ass hair & fake ass chain back I won't even pulling her hair & they was dropping out."

On 26 May 2022, Investigator Sturgill issued an arrest warrant for Defendant. Investigator Sturgill attempted to get in touch with Defendant several times by visiting her home and leaving his business card at her front door and on her car window. On 9 June 2022, Defendant called the police station regarding an unrelated incident and was informed about her arrest warrant. Defendant contacted Sturgill

the next day, and Sturgill instructed Defendant to turn herself in and to bring the hair and necklace with her. On 24 June 2022, Defendant turned herself in and turned over Ms. Yates's property. Defendant was subsequently charged with larceny from the person, assault inflicting serious injury, and disorderly conduct, and the case came on for trial 12 February 2024.

At trial, Defendant testified that after the altercation between Defendant and Ms. Yates, she was "looking on the ground for [her] glasses[,]" saw "braids on the ground," and, believing them to be her braids, "pick[ed her] braids up off the ground, like scooping them up." Defendant explained that after parking at the gas station, she realized "[Ms. Yates's] hair, and [Ms. Yates's] necklace was tangled up around [her] glasses and stuff." Defendant testified that after realizing she had Ms. Yates's belongings, she "made a Facebook post" since Ms. Yates was on Defendant's "social media," rather than returning in person, which she worried may lead to another altercation. Defendant further claimed she "would try to give [Ms. Yates's belongings] to [J.J.,]" but that he wouldn't take it, and she also "tried to give [Ms. Yates's] -- the necklace to her friend" but Defendant did not explain why that did not work out. Ms. Yates, however, testified that Defendant made no attempts to return the hair and necklace.

At the close of the State's evidence, Defendant moved to dismiss each charge for insufficient evidence. The trial court denied the motion regarding the larceny and disorderly conduct charges but granted Defendant's motion regarding the assault

inflicting serious injury. The jury ultimately found Defendant guilty of misdemeanor larceny, simple assault, and disorderly conduct.

The trial court sentenced Defendant to forty-five days of imprisonment, suspended for thirty-six months of supervised probation for misdemeanor larceny, and forty-five days of imprisonment, consecutive, suspended for thirty-six months of supervised probation for simple assault and disorderly conduct.

During the sentencing, Ms. Yates asked for a restitution award in the amount of $700. Ms. Yates claimed that it cost around $400 to get her hair fixed but did not state how much it would cost to have her necklace repaired. Defense counsel asked Ms. Yates to provide verification of the $700 request, but Ms. Yates failed to provide any. The trial court subsequently entered an order for restitution in the amount of $700.

On 22 February 2024, Defendant gave improper oral notice of appeal before a different criminal session of the Wayne County Superior Court and subsequently filed for writ of certiorari ("PWC").

## II. <u>Jurisdiction</u>

Although this Court has jurisdiction to hear an appeal from a final judgment of a superior court, pursuant to N.C.G.S. §§ 7A-27(b)(1) and 15A-1444(a) (2023), Defendant failed to properly appeal.

Rule 4 permits parties in criminal cases to give an oral notice of appeal by "giving oral notice of appeal *at trial*[.]" N.C.R. App. P. 4(a)(1)(2) (emphasis added). An

oral notice of appeal given after a proceeding has concluded and judgment has been entered is ineffective under Rule 4. *See State v. Hammonds*, 218 N.C. App. 158, 162 (2012) (holding oral notice was inadequate where the defendant's counsel attempted to give oral notice of appeal to the trial court after the trial had ended and judgment was entered). Thus, "when a defendant has not properly given notice of appeal, this Court is without jurisdiction to hear the appeal." *State v. McCoy*, 171 N.C. App. 636, 638 (2005). Here, defense counsel's oral notice of appeal occurred approximately one week after judgment was entered against Defendant, and we are without jurisdiction to hear the appeal.

This Court may, however, issue a PWC "in appropriate circumstances . . . to permit review of the judgment and orders of trial tribunals when the right to prosecute an appeal has been lost by failure to take timely action[.]" N.C.R. App. P. 21(a)(1); *see also State v. Smith,* 292 N.C. App. 662, 665 (2024). In order to grant a PWC, the petitioner must show (1) "merit or that error was probably committed below," and that (2) "extraordinary circumstances" justify the issuance of the writ. *Cryan v. Nat'l Council of YMCAs of the U.S.*, 384 N.C. 569, 572 (2023) (citations omitted). "There is no fixed list of 'extraordinary circumstances' that warrant certiorari review, but this factor generally requires a showing of substantial harm, considerable waste of judicial resources, or 'wide-reaching issues of justice and liberty at stake.'" *Id.* at 573 (citation omitted). This Court, however, has discretion to grant a PWC to review the judgment entered. *See McCoy*, 171 N.C. App. at 638 ("While this

Court cannot hear defendant's direct appeal [for failure to comply with Rule 4], it does have the discretion to consider the matter by granting a [PWC].").

As explained below, Defendant has shown, and the State concedes, that error was committed below; thus, we grant Defendant's PWC in our discretion and proceed to the merits. *See Cryan*, 384 N.C. at 572; *see also State v. Holanek*, 242 N.C. App. 633, 640 (2015).

### III. <u>Analysis</u>

On appeal, Defendant argues the trial court erred by: (A) denying her motion to dismiss the larceny charge, where there was insufficient evidence of Defendant's intent to permanently deprive Ms. Yates of her property; (B) assigning a longer period of supervised probation than mandated by North Carolina statute; and (C) granting a restitution award against Defendant, where there was insufficient evidence to support such a reward. We address each argument, in turn.

### A. Motion to Dismiss

Defendant first argues the trial court erred by denying her motion to dismiss the misdemeanor larceny charge. Specifically, Defendant contends the State did not produce sufficient evidence that Defendant had the intent to permanently deprive Ms. Yates of her property. We disagree.

This Court reviews a trial court's denial of a motion to dismiss de novo. *State v. McDaniel*, 372 N.C. 594, 603 (2019). Upon review, we must determine "whether there is substantial evidence (1) of each essential element of the offense charged, or

of a lesser offense included therein, and (2) of [the] defendant's being the perpetrator of such offense." *State v. Fritsch*, 351 N.C. 373, 378 (2000) (citation omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78 (1980) (citation omitted). "The Court must consider the evidence in the light most favorable to the State and the State is entitled to every reasonable inference to be drawn from that evidence[,]" and "[c]ontradictions and discrepancies do not warrant dismissal of the case but are for the jury to resolve." *State v. Horskins*, 228 N.C. App. 217, 220 (2013). Additionally, it is the jury's role to "assess witness credibility." *State v. McCutcheon*, 281 N.C. App. 149, 153 (2021) (citation modified).

"Larceny is the taking and carrying away of the personal property of another, without his consent, and with the intent to deprive him of its possession permanently." *State v. Myrick*, 306 N.C. 110, 116 (1982) (citation modified). "The taker must have had the intent to steal at the time [s]he unlawfully takes the property from the owner's possession[.]" *State v. Bowers*, 273 N.C. 652, 655 (1968) (citation omitted). Further, "it is not necessary that a defendant would be successful in permanently depriving the rightful owner of his possession. It is sufficient if there is a taking with the intent to permanently deprive the owner of his possession at the time of the taking." *State v. King*, 299 N.C. 707, 714 (1980).

The intent to permanently deprive the owner "can be inferred from the surrounding circumstances[,]" *State v. Kemmerlin*, 356 N.C. 446, 474 (2002), and can

be inferred where there is "no evidence that the defendant ever intended to return the property[,]" and the defendant shows a "complete lack of concern as to whether the owner ever recover[s] the property[,]" *State v. Barts*, 316 N.C. 666, 690 (1986).

In *Bart*, the defendant stole a pick-up truck and later abandoned the truck. *Id.* at 690. The defendant was subsequently charged with larceny and argued "the evidence only indicate[d] an intention to temporarily deprive" the owner of the truck. *Id.* This Court disagreed with the defendant and held that "the defendant's taking and subsequent abandonment of the vehicle put it beyond his power to return and indicated a complete lack of concern as to whether the owner ever recovered the truck[,]" which "constituted sufficient evidence of an intent to permanently deprive the owner of the property." *Id.*

Here, the State presented evidence at trial that Defendant picked up Ms. Yates's belongings without her consent, left the scene with Ms. Yates's property, posted a Facebook photo of the items with a caption referencing Ms. Yates, ignored several notices by police to contact them regarding the altercation, and only turned the items into the police once Defendant decided to respond to the warrant for her arrest—over one month later. This evidence demonstrates Defendant's lack of concern for returning Ms. Yates's property. *See id.* at 690. Although Defendant presented evidence that she had asked J.J. and one of Ms. Yates's friends to return the items to Ms. Yates, any contradiction was for the jury to resolve and did not warrant a dismissal of the case. *See Horskins*, 228 N.C. App. at 220.

Accordingly, in viewing the evidence in the light most favorable to the State, *see id.* at 220, the trial court did not err in denying Defendant's motion to dismiss, as the State presented substantial evidence for a jury to conclude that Defendant had the intent to permanently deprive Ms. Yates of her items at the time of the taking, *see Barts*, 316 N.C. at 690.

## B. Supervised Probation

Defendant next argues the trial court violated N.C.G.S. § 15A-1343.2(d)(1)-(2) (2023) when it failed to make findings of fact to establish a longer probation period than necessary. The State concedes this argument, and we agree.

Statutory errors are questions of law, and this Court reviews questions of law de novo. *State v. Wilkerson*, 223 N.C. App. 195, 200 (2012). "Under a de novo review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *In re S.W.*, 298 N.C. App. 39, 44 (2025) (citation modified).

Here, the State concedes the trial court violated N.C.G.S. § 15A-1343.2(d)(1)-(2) by imposing thirty-six months of probation for each of Defendant misdemeanor charges without making findings that a longer period was necessary. To issue a longer or shorter sentence than prescribed by statute, the trial court must make "specific findings that longer or shorter periods of probation are necessary." N.C.G.S. § 15A-1343.2(d). The trial court, however, made no findings regarding the necessity for a longer period of probation than what is prescribed by statute, and thus, we vacate and remand to the trial court to impose periods of probation as allowed by

N.C.G.S. § 15A-1343.2(d)(1)-(2) or to make appropriate findings to support longer periods. *See* N.C.G.S. § 15A-1343.2(d).

### C. Restitution Award

Defendant finally argues the trial court erred in granting the restitution award where there was insufficient evidence. The State again concedes this argument, and we agree.

"[A]wards of restitution are reviewed de novo." *State v. Buchanan*, 260 N.C. App. 616, 623 (2018) (citation modified). "[T]he amount of restitution recommended by the trial court must be supported by evidence adduced at trial or at sentencing." *State v. Moore*, 365 N.C. 283, 285 (2011) (citation omitted).

Here, again, the State concedes the trial court erred in ordering Defendant to pay $700 in restitution, because the amount was unsupported by sufficient evidence as Ms. Yates testified only as to her hair and did not indicate the approximate amount of restitution for her necklace. We thus vacate and remand this issue to the trial court. *See id.* at 285 (holding that where there is "some evidence," but it is "not specific enough to support the award . . . . the appropriate course . . . is to remand for the trial court to determine the amount of damage proximately caused"); *see also State v. Hunt*, 250 N.C. App. 238, 253 (2016) ("When a restitution award is vacated, the typical remedy is to remand the restitution portion of the sentence for a new sentencing hearing." (citation omitted)).

### IV. Conclusion

Upon careful review, we hold the trial court did not err in denying Defendant's motion to dismiss, where the State presented substantial evidence of Defendant's intent to permanently deprive Ms. Yates of her property. The trial court erred, however, by failing to make the necessary findings of fact when it ordered a longer probation period, and by awarding $700 in restitution to Ms. Yates without supporting evidence.

AFFIRMED IN PART AND VACATED AND REMANDED IN PART.

Judges COLLINS and CARPENTER concur.

Report per Rule 30(e).